This is a custody modification case.
Gladys Harris Galloway (mother) and Steven Harris (father) were divorced in 1985. Pursuant to an agreement of the parties, which was incorporated into the final divorce judgment, custody of the minor son, Beau, was awarded to the mother, subject to the *Page 101 
father's visitation, and the father was ordered to pay child support. In 1991, the State of Alabama, on behalf of the mother, filed a petition for modification, seeking to increase the child support paid by the father. The father answered and filed a counterclaim seeking custody of the child.
Ore tenus proceedings were held in January 1993, and in June 1993, the trial court entered an order changing custody of the child to the father. The mother appeals. The dispositive issue on appeal is whether the trial court abused its discretion by modifying the divorce judgment to change custody of the parties' child from the mother to the father.
Initially, we note that in child custody cases, when evidence is presented ore tenus, the judgment of the trial court is presumed correct, and that judgment will not be reversed absent an abuse of discretion or a showing that the judgment is plainly and palpably wrong. Hermsmeier v. McCoy, 591 So.2d 508
(Ala.Civ.App. 1991). When there is a prior custody order, the party seeking to modify that order must show that a material change in circumstances has occurred since the last order, which warrants a change in custody. The petitioner must also show that the change in custody will materially promote the child's best interests, and that the benefits of the change will more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, 455 So.2d 863
(Ala. 1984). The burden of proof placed upon a noncustodial parent seeking to modify a prior custody order to change custody is a heavy burden. Hermsmeier, supra, and Mashburn v.Mashburn, 555 So.2d 1123 (Ala.Civ.App. 1989).
Our thorough and careful review of this record, which includes extensive testimony of numerous witnesses, reveals certain pertinent facts. The mother's son from a previous marriage, Jason, was two years old when the parties married, and Jason considers the father to be his own father. The mother and the father were married for approximately three years, and Beau was one and a half years old at the time of the divorce. After the divorce, the father remarried, and he has remained in that marriage for over five years. That marriage, to an elementary school teacher, has produced one child, Abby, who was two and a half years old at the time of trial. Testimony indicated that Beau has a good relationship with his father, his stepmother, and Abby.
The mother also remarried, but that marriage ended in divorce. The mother dated another man for approximately one year. The testimony indicates that approximately one year prior to trial, the mother had allowed this man to stay in her home for several weeks. Testimony indicated that this was because he had no other place to stay, that he slept on the sofa, that he and the mother did not have a sexual relationship, and that he made some improvements to the home in exchange for the mother's allowing him to stay there. At the time of the trial, he was no longer staying in her home, and the relationship had ended.
The record reveals that at the time of the trial, Beau was 9 years old and in the third grade, and Jason was 12 years old and in the seventh grade. School records reveal that Jason has a learning disability in the areas of reading and written language. Beau's second grade teacher testified that when Beau was in the second grade, she suspected that he might have a learning disability. Although his intelligence score was average, testing revealed that Beau had a learning disability in the areas of reading and spelling, that he had visual perception difficulties, and that his reading level was approximately one and a half years behind. Beau was placed in a learning disability class. Further testimony indicates that Beau's progress is dependent upon daily assistance with his school work and parental involvement.
The father contends that the mother demonstrates instability in her personal and employment relationships, and that he can provide a more stable environment for Beau during this critical stage in the child's development. The record discloses undisputed evidence that the father is a fit parent and that he loves both boys. He has fulfilled his financial support obligation to Beau, and he also provided paternal support for Jason during the marriage and since the divorce. He *Page 102 
testified that he loves Jason "just like he was my own son." Both boys visit the father two days a week and every third weekend. The father participates in numerous activities with the boys, including coaching their ball teams, attending church, and taking them to sporting events. He helps Beau with his reading, and he stresses to both boys the importance of education. He also hired a tutor to assist Beau one day a week. Beau's stepmother also helps Beau with his homework and with other school projects.
The record reveals that Jason and Beau have a close sibling relationship. The father acknowledged that separating the boys will cause some trauma and that it is important that they grow up together; however, he testified that Jason was "just kind of lopping along" in his education and that Jason's conduct and example were a negative influence on Beau. He also testified that a change in custody would involve Beau's changing schools. The father further testified that Jason did not want to be separated from Beau, and that Beau had cried and said that he wanted to stay with his mother. When specifically questioned regarding what benefit he could provide to outweigh the detrimental effect of uprooting Beau, he responded:
 "I can provide him a stable home life where he is there all the time, he won't be loaned out everywhere. He will be able to see a good home life and see a regular family. I would like to teach him how to save money, how to handle his money, give him some jobs to earn money, make sure that he puts some of that in the bank. I want him to have money in his pocket. I would like to give him an allowance so he can have money in his pocket all the time. As far as educational, I can provide a steady learning experience for him instead of two days a week where you have to cram. I can give him a steady educational learning experience."
Pursuant to an agreement, both Beau and Jason testified outside the presence of the parties. Beau testified that he loves both of his parents, but that he wants to continue living with his mother and his brother. He stated that he was happy visiting his father's home and that he wanted to continue that visitation. He testified that both parents help him with his homework. Jason testified that he was worried about being separated from his brother, that he and Beau sometimes cry together about the possibility of being separated, and that Beau had told him that he wants to stay with him and his mother. Jason also stated that both the mother and the father help them with their homework.
The record contains testimony of the mother, the father, Beau's tutor, his second grade teacher, and the principal of Beau's school, as well as school records. The teacher and the principal testified that the mother conferred with teachers, participated in school activities, and picked Beau up after school. The record indicates that the mother is genuinely interested in the boys' schooling and that she is cooperative in supporting the best interests of the children. The record also indicates that the father has attended conferences and is a cooperative and concerned parent. The teacher testified that both parents seem to understand Beau's special educational needs. Additionally, the mother testified that she has lived in the same home for eleven years. Apparently, Beau has lived there for his entire life. The mother is a hairstylist and has recently become the owner of a salon.
It is also clear from the record that the father loves Beau and is capable of providing a good home for him; however, evidence showing a parent to be fit to have custody of the child, without more, is insufficient to change a prior custody order from one suitable parent to another. Crane v. Crane,563 So.2d 615 (Ala.Civ.App. 1990). The father had a very stringent burden of proof. McLendon, supra. Our meticulous review of the record reveals no support for a finding that the father met this heavy burden. Instead, record evidence reveals that both parents love the child and that they are both capable of providing a suitable home for their child. In fact, the court stated at the conclusion of the trial: "I do commend both of you. I think you are both very concerned about your son and both of these boys. . . ." Modification of custody from one parent to *Page 103 
the other can be granted only where the evidence discloses "an obvious and overwhelming necessity for change of custody."Whitfield v. Whitfield, 570 So.2d 700, 702
(Ala.Civ.App. 1990). The evidence here does not show that the best interests of the child would be materially promoted by changing custody from one suitable parent to another. See Hermsmeier,supra, and Crane, supra. The father simply failed to meet his burden of proof imposed by McLendon, and we conclude that the trial court abused its discretion in changing custody from one suitable parent to another. This is especially true in light of the significant disruptive effect that would be caused by uprooting this child from the only home he has ever known and separating him from his brother, with whom he has an extremely close relationship. Additionally, we note Beau's stated desire to remain with his mother. While we recognize that the wish of a child to be with one parent rather than another is not controlling, it is a factor to be considered. See Hermsmeier,supra.
We do not wish to discount the importance of parental involvement in a child's education; however, our review of the record reveals that both parents appear to be concerned and involved in Beau's educational progress. We commend this father for his involvement with Beau and also with Jason. We are convinced that he is an excellent father, and we encourage him to continue his dedication to the boys. We also encourage the parties to continue to work together for the best interests of these children.
Based on the foregoing, we reverse the judgment and remand the cause for the trial court to enter an order consistent with this opinion.
REVERSED AND REMANDED WITH INSTRUCTIONS.
YATES, J., concurs.
ROBERTSON, P.J., dissents.