807 So.2d 561 (2001)
Lisa Ann FRICKS
v.
Noel Christopher WOOD.
2000158.
Court of Civil Appeals of Alabama.
May 18, 2001.
Rehearing Denied July 20, 2001.
*562 Judy H. Barganier, Montgomery, for appellant.
J. Myron Smith of J. Myron Smith & Associates, Prattville, for appellee.
YATES, Presiding Judge.
This is a child-custody-modification case. The trial court divorced the parties in July 1998. Pursuant to an agreement between the parties incorporated into the divorce judgment, the court, among other things, awarded the parties joint legal custody of their minor child, with primary physical custody awarded to the mother.
In November 1999, the father petitioned for a modification, alleging that the mother had "obstructed the father-son relationship." The mother answered and counter-claimed, asking that the father be held in contempt for his failure to pay an outstanding debt as specified in the divorce judgment. After conducting ore tenus proceedings, the court, on September 20, 2000, entered an order awarding the father primary physical custody of the minor child. The order stated, in part:
"The primary issue involves who will have primary physical custody of the parties' minor child, [C.W.], who is now 5 years old. [C.W.] was 3 years old when the parties divorced.
"The divorce decree in this case incorporated a settlement agreement between the parties. The agreement specified that the parties would have joint custody of the child with his primary residence being with the [mother]. That, as well as other provisions of the agreement, were not artfully drafted. It appears to this Court that the agreement and decree, in effect, gave the parties joint legal custody of the child, with primary physical custody to the [mother]. It is therefore the opinion of this Court that the [Ex parte McLendon, 455 So.2d 863 (Ala.1984),] standard applies.
"That being said, the [father] is required to prove that a change in custody will materially promote the child's best interest and that the benefits of the change will more than offset the inherently disruptive effect caused by a change in custody. The Court finds that the [father] has met his burden.
"During the two hearings the Court had an opportunity to and did observe the actions and demeanor of the parties and witnesses. Not only has this Court heard what was said, but it has also paid particular attention to how it was said. As a result, the Court finds that a substantial amount of the [mother's] testimony is not credible.
"As stated above, under the divorce decree, the parties have joint legal custody of the child. The [mother] has done very little, if anything, to attempt to comply with the spirit, meaning and intent of joint legal custody. She not only has failed to help foster the relationship between the [father] and his son, but has attempted to frustrate the father's ability to maintain a meaningful relationship with his son.
"Recently, when the child was registered for kindergarten, the [mother] did not even list the [father] as the child's father. Instead, she listed her new husband. She also did not list the [father] as a person to contact in the case of a medical emergency at school. Instead, she listed her mother who does live in Prattville and her sister, who lives in Millbrook. The [father] is a Prattville Police officer who now works the day shift and who would most certainly be easy to reach if there were an emergency during school hours. Further, the [mother] did not even list the father as a *563 person approved to pick up the child from school.
"The [mother's] new husband is a heavy drinker and smoker. He drinks beer daily and, depending upon who you believe, consumes one to two cases of beer a week. The child has reported to the [father] that this conduct is of concern to him. The [father] does not smoke and his consumption of alcohol is minimal.
"The child was also upset and afraid when the [mother] and her new husband were attempting to relocate to Germany. Although they did not go through with the move, the new husband stated that he still plans to work toward a move to Germany.
"The [father] works in Prattville and lives in Autaugaville, approximately 20 minutes west of Prattville. He has remarried and he and his new wife have a Down's syndrome child who is a few months old. The relationship between the child and his step-brother and stepmother is excellent. He is and will be loved, nurtured and cared for.
"Accordingly, the Court finds that a change in physical custody will materially promote the child's best interests and that the disruptive effect of the change would be minimal, if any."
The mother appeals, arguing that the court erred in awarding custody to the father, because, she says, the evidence was insufficient to warrant a change of custody pursuant to Ex parte McLendon, supra. This court has stated:
"When a noncustodial parent seeks a modification of a prior custody determination, the evidentiary standards set forth in Ex parte McLendon, 455 So.2d 863 (Ala.1984), must be applied. The McLendon standard applies when the parents share joint legal custody and a previous judicial determination places primary physical custody of the child with one parent. Scacca v. Scacca, 694 So.2d 1 (Ala.Civ.App.1997); see also Ex parte Bryowsky, 676 So.2d 1322 (Ala. 1996) (holding that McLendon standard applied where agreement between the parties granted the parties joint legal custody of the child, with physical custody to the mother, and agreement was adopted by the trial court). The petitioning parent must show by substantial evidence that a change in custody will materially promote the child's best interests and welfare. Ex parte McLendon, supra, Etheridge v. Etheridge, 712 So.2d 1089 (Ala.Civ.App.1997). The petitioning parent must also show that the good brought about by the change in custody would more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, supra. The ore tenus rule is applicable to child-custody-modification proceedings, and the court's judgment based on findings of fact will not be reversed absent a showing that the findings are plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995)."
P.A.T. v. K.T.G., 749 So.2d 454, 456 (Ala. Civ.App.1999).
The record reveals the following: The mother admitted that on numerous occasions, she had denied the father his scheduled visitation because she was confused or had made a mistake in interpreting the parties' divorce judgment; that she had prevented the father from picking the child up from his preschool program, because she felt that the child's education was more important and that she feared that the father might kidnap the child because on one occasion he had picked the child up without calling her first. She admitted that she had purposely omitted the father's name and his contact information from all of the child's school enrollment *564 forms, and that she had listed her new husband as the child's father. She denied that she or her daughter had taped the child's mouth and placed the child in a closet for talking too much; the incident was reported and investigated by the Department of Human Resources ("DHR"). She stated that the children had been playing and she submitted a letter that she had requested from DHR, which stated in part, "Our investigation has caused us to believe that the alleged physical abuse of [the child] is NOT INDICATED, i.e. not true."
The father stated that after he remarried and moved to Autaugaville in January 1999, the mother enrolled the child in a preschool program and began to deny him visitation. He stated that the child had expressed concern about his stepfather's drinking; had become apprehensive after he was told that the family was moving to Germany; and that the child told the father he had been tied up and placed in a closet.
Several witnesses testified as to the stepfather's heavy drinking, including his former wife, who stated that his drinking had been one of the primary causes for their divorce. The stepfather admitted that he continues to drink beer on a daily basis and consumes about a case per week; that he continues to smoke in the house, although he had agreed to stop smoking around the child; and that he was pursuing plans to relocate the family to Germany.
After carefully reviewing the record, we cannot say the court erred in awarding custody of the child to the father. There was sufficient evidence to support a finding that the mother had deliberately obstructed the father's relationship with the child and that the father's home would provide a more suitable environment for the child's development. We note the detailed findings by the trial court, including the finding that the mother's testimony was not credible. "`In determining the weight to be accorded to the testimony of any witness, the trial court may consider the demeanor of the witness and the witness's apparent candor or evasiveness.'" Crowe v. Crowe, 602 So.2d 441, 442 (Ala. Civ.App.1992), quoting Brown v. Brown, 586 So.2d 919, 921 (Ala.Civ.App.1991). We are not allowed to reweigh the evidence on appeal, and we will not substitute our judgment for that of the trial court. Anonymous v. Anonymous, 620 So.2d 43 (Ala.Civ.App.1993). We therefore accept the trial court's determination that the father met his burden under the McLendon standard.
AFFIRMED.
THOMPSON, PITTMAN, and MURDOCK, JJ., concur.
CRAWLEY, J., dissents.
CRAWLEY, Judge, dissenting.
I must respectfully dissent. The standard for modifying custody under Ex parte McLendon, 455 So.2d 863, 865 (Ala.1984), is a stringent one. "It is not enough for the parent seeking the change to prove that he or she is a fit custodian." Kunkel v. Kunkel, 547 So.2d 555, 560 (Ala.Civ.App. 1989); see also Galloway v. Harris, 646 So.2d 100, 102 (Ala.Civ.App.1994). Nor is the mere possibility that the custodial parent may relocate sufficient to meet the McLendon standard. See Kunkel, 547 So.2d at 561 ("The mere fact that a custodial parent has changed his or her residence is not sufficient in and of itself to justify a change in custody."). Disputes over visitation are also insufficient under McLendon to change custody; the trial court has other options available to resolve visitation disputes. Foster v. Carden, 515 So.2d 1258, 1260 (Ala.Civ.App.1987). From all that appears in this case, the trial *565 court found the mother and her new husband to be unsuitable as custodial parents because the mother had frustrated some visitation attempts, because the mother was not "fostering" the relationship between the father and the child, because the mother and her new husband had indicated a desire to relocate to Germany at some time in the future, and because the mother's new husband drank alcohol and smoked in the home in the presence of the child. In my opinion, the father failed to prove that "a material change[] [in circumstances that] affect[ed] the child's welfare [had] occurred," Kunkel, 547 So.2d at 560, and, thus, failed to prove "`an obvious and overwhelming necessity for [a] change of custody.'" Galloway, 646 So.2d at 103 (quoting Whitfield v. Whitfield, 570 So.2d 700, 702 (Ala.Civ.App.1990)). I would reverse the trial court's judgment changing custody from the mother to the father; accordingly, I respectfully dissent.