On July 16, 1992, pursuant to an agreement between the parties that was incorporated into their final divorce judgment, the trial court awarded the father primary custody of their two children and issued an income withholding order requiring the mother to pay $173 per month child support. Four months later, the father petitioned the court to issue another income withholding order to be served on the mother's new employer. In December 1992, the trial court found that the mother was $1,211 in arrears, and it issued an order of continuing income withholding for support, directing the employer to withhold $173 per month for current support and maintenance of the children and, further, to withhold $100 per month to be applied toward the arrearage.
On November 30, 1993, the father petitioned for a rule nisi, seeking payment of a child support arrearage and payment of unpaid debts that the mother had been ordered to pay in the original divorce judgment. He *Page 1062 
also sought an award of an attorney fee and a modification to increase child support. The mother answered and counterclaimed, seeking a modification of the divorce judgment to award her primary custody of the children or, in the alternative, increased visitation.
On March 31, 1994, after an ore tenus proceeding, the trial court found that the mother was $2,081 in arrears; that arrearage is being paid. The trial court increased the mother's child support obligation to $378 per month and "ratified and confirmed" all other provisions of the divorce judgment. The mother appeals, contending that the trial court erred (1) in failing to award her primary custody or increased visitation and (2) in increasing her obligation to pay child support.
It is well settled that the judgment of a trial court in a divorce case in which the evidence is presented ore tenus is entitled to a presumption of correctness and that it will not be reversed on appeal unless it is so unsupported by the evidence as to be an abuse of discretion. Jenkins v. Jenkins,541 So.2d 19 (Ala.Civ.App. 1989). "This rule applies in reviewing child custody cases and requires a showing that the trial court abused its discretion and was plainly and palpably wrong." Id. at 20.
The parent seeking a custody modification "must show not only that [he or] she is fit, but also that the change of custody 'materially promotes' the child's best interest and welfare."Ex parte McLendon, 455 So.2d 863, 866 (Ala. 1984). "The evidence must be so substantial as to disclose an obvious and overwhelming necessity for a change. This requires a showing that the positive good brought about by the change of custody will more than offset the inherently disruptive effect caused by uprooting the child." Klapal v. Brannon, 610 So.2d 1167,1169 (Ala.Civ.App. 1992) (citations omitted).
Where the parties agree to joint legal custody and shared physical custody of the children without a judicial determination preferring either parent, "custody [is] appropriately determined by the trial court according to what [is] in the 'best interest' of the children." Ex parte Couch,521 So.2d 987, 989 (Ala. 1988). However, where the parents have joint legal custody, but a previous judicial determination grants primary custody to one parent and secondary custody to the other, "the trial court [is] correct in applying theMcLendon standard and requiring the [parent] to show that a change in custody would materially promote the welfare and best interests of the child, offsetting the disruptive effect of uprooting the child." Blackmon v. Scott, 622 So.2d 393, 394
(Ala.Civ.App. 1993).
The mother argues that the best interest of the child standard of Couch should apply, because, she says, she believed, based upon representations she says were made to her by the father's attorney and based upon the language of the divorce agreement, that "she was signing a true joint custody agreement" and that "she would be on equal footing with the [father] in terms of custody and visitation."
The amended agreement that was incorporated into the final divorce judgment states:
 "[T]he Husband shall be designated as the primary custodian and the Wife shall be the secondary custodian of the minor children. The children shall reside in the physical custody and residence of the father at all times of his period of primary custody. The children shall reside with the mother during the following periods of secondary custody. . . ."
The agreement then sets out the periods of secondary custody, allowing the mother 2 weekends each month, 30 days during the summer, birthdays and certain holidays, and "such other times as are agreed upon between the parties." Further, the agreement provides that if a disagreement arises between the parties as to any aspect of the children's activities, "the primary custodian is . . . designated as having the final authority and responsibility regarding the involvement of the minor children in said activity."
These provisions unambiguously indicate that the parties agreed to a joint custody arrangement, with the father as primary custodian. The record contains an "acknowledgment of representation," signed by the mother, stating that the father's attorney had *Page 1063 
informed her that he did not represent her and that he would "use his best efforts to protect his client's best interest." The mother's argument concerning her reliance on statements made by the father's attorney is without merit.
In order to get a modification of the award of primary custody, the movant must show that the modification "would materially promote the welfare and best interests of the child, offsetting the disruptive effect of uprooting the child."Blackmon, supra, at 394. The mother testified that she works less now than she did at the time of divorce and that she would be able to spend evenings and weekends with the children because of her reduced work schedule. She also testified that she now has a stable home and marriage. However, "It is not enough that the parent show that [he or] she has remarried, reformed [his or] her lifestyle, and improved [his or] her financial position." Ex parte McLendon, supra, at 866.
In seeking custody, the mother also argues that the children should be with their "natural mother" while the father is working, rather than with the father's new wife. Nothing in the record indicates that the new wife is incapable of caring for the children or is unwilling to care for them. In fact, she testified that she had quit her job in order to take care of the children. The children have lived with the father since May 1992 and appear to be well adjusted. We conclude that the mother has not shown that a change in custody would materially promote the best interests of the children and that the change would offset the disruptive effect of uprooting them.
The mother next argues that she should be allowed increased visitation with the children while the father is working because, she says, "it would be better for a child to spend time with a natural parent than to spend time with a third party." We note, however, that the mother had failed to regularly exercise the visitation to which she was entitled.
"It is well-settled law in Alabama that the determination of visitation rights for the noncustodial parent is a matter resting within the sound discretion of the trial court and that its judgment on that matter will not be reversed on appeal except for an abuse of that discretion." French v. Lyford,636 So.2d 437, 440 (Ala.Civ.App. 1994). "[T]he primary consideration in setting visitation rights is the best interests and welfare of the child. Furthermore, each child visitation case must be decided on its own facts and circumstances." Fanning v.Fanning, 504 So.2d 737, 739 (Ala.Civ.App. 1987) (citations omitted). We conclude that the trial court did not abuse its discretion in denying the mother's alternative prayer for increased visitation.
The mother further contends that the trial court erred in increasing her child support obligation, arguing that the father failed to prove that there had been a material change in circumstances. Rule 32(A)(2)(i), Ala.R.Jud.Admin., as it applied to any actions or proceedings instituted before October 4, 1993, stated: "The provisions of any judgment respecting child support shall be modified . . . only upon a showing of a material change of circumstances that is substantial and continuing." However, for "all new actions filed or proceedings instituted on or after October 4, 1993," Rule 32, Ala.R.Jud.Admin., as amended, applies. See "Preface Relating to Scope," Rule 32. Rule 32(A), as amended effective October 4, 1993, reads, in pertinent part:
"(3) Modifications.
 "The child support guidelines shall be used by the parties as the basis for periodic updates of child support obligations.
". . . .
 "(b) There shall be a rebuttable presumption that child support should be modified when the difference between the existing child support award and the amount determined by application of these guidelines varies more than ten percent (10%), unless the variation is due to the fact that the existing child support award resulted from a rebuttal of the guidelines and there has been no change in the circumstances *Page 1064 
that resulted in the rebuttal of the guidelines."
(Emphasis added.)
The father filed his petition on November 30, 1993; therefore, Rule 32, as amended, applies. The mother's monthly income had increased from $800.00 to $1402.26. The initial child support award was $173.00, and the amount determined by application of the Child Support Guidelines was $378.00; the variance was more than 10%. Based on the record, we conclude that the mother failed to present sufficient evidence to rebut the presumption that the child support award should have been modified. Accordingly, the trial court did not abuse its discretion in increasing the mother's child support obligation.
The father's request for an attorney fee on appeal is denied.
AFFIRMED.
ROBERTSON, P.J., and THIGPEN, MONROE and CRAWLEY, JJ., concur.