The trial court divorced the parties on January 21, 1994, awarding them joint legal custody of their minor son, W.G., with the mother having primary custody and the father having reasonable visitation rights. The court ordered the father to pay all work-related child care or daycare expenses. On October 12, 1994, the mother petitioned for a rule nisi, asking the court to find the father in contempt for his refusal to pay daycare *Page 176 
expenses, as required by the divorce judgment, and to award her a reasonable attorney fee. On October 17, 1994, the father petitioned for a modification, seeking full custody of the child. On March 16, 1995, the mother counter-petitioned for a modification, also seeking full custody.
Following ore tenus proceedings, the court on May 19, 1995, denied the custody modification petitions, ordering that custody of the minor child remain as set forth in the divorce judgment. It granted the mother's rule nisi petition and ordered the father to reimburse the mother $1,751 for daycare expenses she had incurred. The court also granted the mother's request for an attorney fee and ordered her to submit affidavits so that it could determine a reasonable attorney fee. The father moved for a new trial; the court denied that motion. On June 7, 1995, the court awarded the mother a $6000 attorney fee. The father moved to have the fee award set aside; the court denied that motion. The father appeals from the denial of his custody modification petition and from the attorney fee award.
Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928
(Ala.Civ.App. 1994). "Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties' conduct, the results of the litigation, and, where appropriate, the trial court's knowledge and experience as to the value of the services performed by the attorney." Figures v. Figures, 624 So.2d 188, 191
(Ala.Civ.App. 1993). Additionally, a trial court is presumed to have knowledge from which it may set a reasonable attorney fee even when there is no evidence as to the reasonableness of the attorney fee. Taylor v. Taylor, 486 So.2d 1294 (Ala.Civ.App. 1986).
The record indicates that the mother removed W.G., who was three years old at the time of the hearing, from Perimeter North Child Care, which was owned by W.G.'s paternal grandmother, and placed him in a daycare program at the First Presbyterian Church. The father alleged that the mother had removed W.G. from the grandmother's daycare "in an act of revenge" because the father had told the sheriff's department that the mother was a possible suspect concerning the father's receipt of harassing pornographic material in the mail. The sheriff's department conducted an investigation; the mother was fingerprinted, and excluded as a suspect because her fingerprints did not match those found on the pornographic materials.
The mother denied removing W.G. from the daycare because the father had named her as a suspect, and she further testified that she removed W.G. from the grandmother's daycare because the father, or the grandmother, was on a daily basis carrying the child away from the daycare. She stated that she was concerned because she did not know where the child was during the day and that it was "a very stressful situation." She said, "I . . . would get off work early and go to pick [W.G.] up, and he wouldn't be there." The mother asked the father to stop taking the child; however, he continued to remove the child. The father does not deny that the mother expressed her dissatisfaction with the situation and that he ignored her requests.
The mother further testified that she had been looking for a new daycare since the child was two years old and that she wanted W.G. to go to First Presbyterian because it "is probably one of the most reputable daycare and pre-schools in Dothan" and has a "very organized curriculum." She stated that on the day she contacted First Presbyterian daycare she was told that they had one opening available and that she had to take W.G. and register him that day in order to assure his placement. She further stated that she was unable to discuss the matter with the father, although she did write him a letter explaining her reasons for the change. The mother also stated that she had never agreed that W.G. was to attend the grandmother's daycare; the divorce judgment did not stipulate that he be placed there.
The father testified that he was not notified of the change in daycare and that he had not agreed to it. He stated that he objected to W.G.'s being placed in First Presbyterian because in that daycare program snacks *Page 177 
were not furnished during the day, the children slept on blankets on the floor, and he felt it was too crowded; however, he did admit that he thought the care at First Presbyterian was adequate. The father further stated that because W.G. was being kept at the grandmother's daycare it was saving him money. The mother asked the father to pay the First Presbyterian daycare expenses; however, he refused. The following exchange took place between the father and the wife's attorney:
 "Q Have you ever paid a penny for the Presbyterian childcare?
"A No, sir, not one penny.
 "Q And you've been an able-bodied person and have been working?
"A I have been able, yes, sir.
"Q And you have had the ability to pay?
"A Yes, sir.
"Q And you have chosen not to do so?
"A I chose not to do so, yes, sir."
The mother testified that she has a bachelor's degree in English and that she was employed as an English professor at a junior college, earning approximately $20,000 per year. The father owns an auto accessory business. He initially testified that he earned approximately $10,000-$12,000 in 1994; however, he later stated that he did not know what he earned in 1994, but guessed that it was approximately $15,000. He testified that he earned approximately $8000 in 1993. The father originally testified that he receives $200 per week from the business as a salary; however, he later contradicted himself stating that he does not receive a salary. We note that when he was asked why the $200 per week salary was not reported on his income tax return, he responded, "I don't know. That's a good question." The father's testimony regarding his income was, at best, evasive and unclear.
The father pays $250 per month in child support. He testified that he pays his bills, including attorney fees, child support, insurance, church donations, and medicine, directly out of the business. In addition to the income he earns from the business, he also earns income selling cars. He lives at home with his parents and does not pay rent and does not pay for utilities or food.
The evidence shows that the actions of the father precipitated this litigation. He continuously removed the child from daycare, after being asked by the mother not to do so, and when the mother enrolled the child in a new daycare, he willfully refused, in violation of the original divorce judgment, to pay for the costs of daycare, even though he had the ability to do so. Further, it was only after the mother instituted contempt proceedings that the father petitioned for a custody modification, which changed the proceedings from a simple contempt action to a full-blown custody battle. Additionally, it is unclear how much the father earns annually — the evidence indicates that it could be as much as $15,000 or little as $8000 — but it is uncontroverted that the father has at his disposal the auto accessory business funds, from which he pays all of his expenses. Therefore, after thoroughly reviewing the record, with all the attendant presumptions, we conclude that the trial court did not abuse its discretion in awarding the mother a $6000 attorney fee.
The father next argues that he was not found in contempt and that, therefore, he could not be assessed an attorney fee for this aspect of the case. This argument is without merit. An attorney fee may not be awarded in enforcement proceedings unless the defaulting party is found to be in contempt; however, where modification proceedings are also held, an award of an attorney fee is within the trial court's discretion.Grant v. Smith, 661 So.2d 752 (Ala.Civ.App. 1994). Here, the proceedings involved an enforcement action and custody modification proceedings.
The father also contends that the mother had not requested an attorney fee and that, without a request, he had no notice to defend or to question the mother on that issue. This argument is also without merit. In order for attorney fees to be awarded they must first be requested or the issue must be tried by the express or implied consent of the parties. Ayers v. Ayers,643 So.2d 1375 (Ala.Civ.App. 1994). The record shows that the mother requested an attorney *Page 178 
fee in her rule nisi petition and that her modification counter-petition contained a general prayer for "such other, further or different relief as the Court may deem meet and proper in the premises." Additionally, the May 19, 1995, order awarded the mother an attorney fee and required her to submit affidavits so the court could determine a reasonable fee. Those affidavits were served on the father on June 6, 1995; the only response from the father came on August 8, 1995, by way of his motion to set aside the attorney fee. Clearly, the mother did request the fee and the father had sufficient notice to contest the award of a fee.
Finally, the father argues that the trial court erred in denying his petition for a modification of custody. We note that the judgment of a trial court in a divorce case, where the evidence is presented ore tenus, is presumed correct and will not be reversed on appeal unless it is so unsupported by the evidence as to be an abuse of discretion. Scholl v. Parsons,655 So.2d 1060 (Ala.Civ.App. 1995). This rule is also applicable to the review of child custody orders and, in regard to such orders, requires a showing that the trial court abused its discretion and was plainly and palpably wrong. Id. A parent seeking a modification of custody must show that he or she is fit and that the change of custody would materially promote the child's best interests and welfare. Ex parte McLendon,455 So.2d 863 (Ala. 1984). "The evidence must be so substantial as to disclose an obvious and overwhelming necessity for a change. This requires a showing that the positive good brought about by the change of custody will more than offset the inherently disruptive effect caused by uprooting the child." Klapal v.Brannon, 610 So.2d 1167, 1169 (Ala.Civ.App. 1992) (citations omitted). Where the parents have joint legal custody of the child and a previous judicial determination grants primary custody to one parent, the McLendon standard applies and requires the parent seeking a modification of custody to show that a change in custody would materially promote the welfare and best interests of the child, thereby offsetting the disruptive effect of uprooting the child. Scholl, supra.
The original divorce judgment awarded the parties joint custody, with the mother having primary custody; therefore, the father had the burden of satisfying the stringent standard ofMcLendon. After reviewing the evidence, and applying all the appropriate presumptions, we conclude that the trial court's denial of the father's petition was not an abuse of discretion. The father failed to produce evidence "so substantial as to disclose an obvious and overwhelming necessity for a change."Klapal, supra, 610 So.2d at 1169.
The mother requests that damages, pursuant to Rule 38, Ala.R.App.P., be assessed against the father for taking what she calls a frivolous appeal. Rule 38 states: "In civil cases, if the appellate court shall determine on motion or ex mero motu that an appeal is frivolous, it may award just damages and single or double costs to the appellee." Whether to grant or deny damages pursuant to Rule 38 is within the sound discretion of the appellate court. Fox v. Murrell, 622 So.2d 386
(Ala.Civ.App. 1993). The mother's request for damages is denied.
AFFIRMED.
ROBERTSON, P.J., and MONROE, J., concur.
THIGPEN, J., concurs in the result only.
CRAWLEY, J., concurs in part and dissents in part.