829 So.2d 164 (2002)
M.S.H.
v.
C.A.H.
2001188.
Court of Civil Appeals of Alabama.
March 8, 2002.
*165 Joel M. Nomberg, Dothan, for appellant.
Michael B. Brown, Dothan, for appellee.
THOMPSON, Judge.
M.S.H. ("the father") and C.A.H. ("the mother") were divorced by an April 3, 2000, order of the trial court. The parties had entered into a settlement agreement on February 29, 2000. The trial court's April 3, 2000, divorce judgment incorporated the terms of that agreement. The divorce judgment provided, in pertinent part, that the parties share joint custody of their two minor children; that the father pay child support in the amount of $815 per month; that the father maintain health insurance for the children; and that the father pay the mother a $10,000 lump-sum property settlement on March 1, 2001.
On February 7, 2001, the father filed a petition to modify custody of the parties' children. The mother filed an answer on March 8, 2001. On March 9, 2001, the mother filed a counter-petition seeking sole custody of the parties' children, subject to reasonable visitation for the father, *166 and seeking an award of child support under the Rule 32, Ala. R. Jud. Admin., Child Support Guidelines. On March 22, 2001, the mother filed a motion seeking to have the father held in contempt for failing to pay the mother the $10,000 lump-sum property settlement on March 1, 2001. On April 4, 2001, the father filed a motion for pendente lite relief, seeking to reduce his monthly child-support obligation by the amount he paid monthly for the children's day care and seeking to reduce the lumpsum property settlement he owed the mother by the amount he had previously expended for the children's day care. On April 6, 2001, the trial court entered an order granting the father's requested pendente lite relief.
The trial court conducted a hearing and received ore tenus evidence on May 22, 2001. On May 30, 2001, the trial court entered a judgment in which it modified its April 3, 2000, divorce judgment. The May 30, 2001, judgment, among other things, set aside the April 6, 2001, order; awarded the mother primary custody of the parties' children and awarded the father reasonable visitation; ordered the father to pay the lump-sum property settlement awarded to the mother in the original divorce judgment, but reduced the lump-sum property settlement by $150 for each month the father had paid the children's day-care costs. The court also ordered the father to pay all of the children's future day-care costs. The father filed two timely postjudgment motions. The trial court denied both motions. The father appealed.
Where a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ. App.1995). This "presumption of correctness is based in part on the trial court's unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor." Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App. 1999). In addition, when the trial court's judgment does not make specific findings of fact, this court must assume that the trial court made those findings of fact necessary to support its judgment. Ex parte Bryowsky, 676 So.2d 1322 (Ala.1996).
The parties were married on July 27, 1996. The father filed for a divorce on February 29, 2000. The father's attorney drafted the settlement agreement. The divorce was not contested by either party, and the mother was not represented by counsel.
At the time of the parties' divorce, the mother was 27 years old and the father was 42 years old. The divorce judgment ordered the parties to share joint custody of their two children, but it did not establish a visitation schedule. Both parties asserted that they had difficulties agreeing to a consistent visitation schedule for the children, especially regarding holiday visitation. The father testified that he understood the divorce judgment to provide the parents equal time with the children.
The father is self-employed; he manages and owns a majority interest in a flooring business. The mother works fulltime as a technician for a medical clinic. The record contains CS-41 and CS-42 forms prepared by the mother, the father's 2000 W-2 form, and the father's earning statement for the months January 2001 through April 2001.
The children attend a private day-care program. The combined monthly tuition for both children is $503.50. The father testified that the mother failed to make *167 some of the tuition payments to the school. The father asserts that, pursuant to the divorce judgment, the mother was responsible for the children's day-care expenses. However, our review of the divorce judgment indicates that it does not mention which party was to bear the responsibility for work-related child-care costs. The record indicates that both parties have made payments toward the children's day-care tuition since the parties' divorce. The mother testified that after March 2001, she failed to make some of the children's tuition payments because the father had not paid the $10,000 lump-sum property settlement pursuant to the terms of the divorce judgment.
The father asserts that, at some time between the parties' divorce and the hearing in this matter, he had a telephone conversation with the mother, and that during their conversation, the mother threatened to harm herself; the mother denies that assertion. The mother testified that during one of the parties' telephone conversations following the divorce, the mother became upset and hung up on the father. The father testified that he was afraid the mother would harm herself so he sent his brother to the mother's home to check on her. The father testified that he informed the mother that she should not cry or become upset in front of the children because it could upset them.
The father maintains that the mother was molested by her stepfather as a child, but that the mother had allowed the children to associate with her stepfather since the parties' divorce. However, the father testified that he had never actually seen the children in the presence of their stepgrandfather. The mother testified that in December 2000, she and the children attended the Christmas Eve service held at their church and that her mother and stepfather were present. The mother's mother and stepfather do not attend the same church as the mother; the mother testified that she did not know that her stepfather would be present at the service. The mother testified that when the congregation stood to sing a hymn during the service, the youngest child wandered down the pew and stood near the stepgrandfather, but the mother immediately retrieved the child. The mother testified that on one other occasion the stepgrandfather was present when she and the oldest child met the maternal grandmother for lunch. The mother testified that she was not aware that the stepgrandfather would be present. The mother testified that these are the only two instances in which the children have been in the stepgrandfather's presence since the parties' divorce. We note that, pursuant to the trial court's May 30, 2001, judgment, the mother is enjoined from allowing the children to visit with the stepgrandfather.
The mother testified that she takes the children to church services each week and that the children are active in church activities. The minister from the church of which the mother is a member and two church members testified on the mother's behalf; one of the mother's friends also testified. Those witnesses testified that the mother is an extremely patient, nurturing, loving, and caring parent.
At the time of the May 22, 2001, hearing, the father had remarried, and the father and his current wife had a new baby. A childhood friend of the father testified that he had visited with the parties two or three times during the parties' marriage, and with the father a few times since the parties' divorce. The friend stated that the father is a caring and responsible parent.
We first note that on appeal the father asserts that the trial court erred in failing to address some of the father's arguments *168 in its May 30, 2001, judgment. An appeal ordinarily lies only from a final judgment. § 12-22-2, Ala.Code 1975. A judgment is final if it disposes of all claims or the rights or liabilities of all parties. Rule 54, Ala. R. Civ. P.; Ex parte Harris, 506 So.2d 1003, 1004 (Ala.Civ.App.1987). Although the trial court's May 30, 2001, judgment did not specifically address some of the father's assertions, that judgment states in pertinent part that "all other relief sought herein is denied." Thus, we conclude that the trial court's May 30, 2001, order clearly disposed of all of the parties' arguments, and, therefore, that it constituted a final judgment.
The father also asserts that the trial court erred in awarding the mother custody of the children. In modifying an award of custody between parents who, pursuant to the terms of the divorce judgment, were awarded joint legal and physical custody, the court should apply the "best-interest-of-the-child" standard. Ex parte Couch, 521 So.2d 987 (Ala.1988). In determining whether an award of custody would be in the children's best interest, the court considers such factors as "the children's age and sex and each parent's ability to provide for the children's educational, material, moral, and social needs. Tims v. Tims, 519 So.2d 558 (Ala.Civ.App. 1987). Likewise, it is proper for the court to consider the `characteristics of those seeking custody, including age, character, stability, mental and physical health ... [and] the interpersonal relationship between each child and each parent.'" Graham v. Graham, 640 So.2d 963, 964 (Ala. Civ.App.1994) (quoting Ex parte Devine, 398 So.2d 686, 696-97 (Ala.1981)). The trial court's overriding consideration is the best interests and welfare of the children. Id. Because the trial court's award of custody based on ore tenus evidence is afforded a presumption of correctness on appeal, Scholl v. Parsons, supra, this court is not permitted to reweigh the evidence on appeal or to substitute its judgment for that of the trial court. Somers v. McCoy, 777 So.2d 141 (Ala.Civ.App.2000).
A thorough review of the record makes it clear that both parties are responsible parents and that both parents love the children. However, both parties testified that the joint-custody arrangement was no longer tenable, and both parties sought a modification of the April 3, 2000, divorce judgment. Thus, the trial court was required to make a custody determination. The record indicates that both parents would be fit to have custody of the children and that both parents demonstrated that they would be willing and able to care for the children's needs. This court cannot say, given the evidence presented in the record on appeal, that the trial court abused its discretion in determining that the best interest of the children would be served by awarding custody of the children to the mother or that the trial court's award of custody to the mother was so unsupported by the evidence as to be plainly and palpably wrong. See Scholl v. Parsons, supra.
On appeal, the father also argues that the trial court erred in modifying his child-support obligation without complying with the Rule 32, Ala. R. Jud. Admin., Child Support Guidelines. If the combination of the parties' income is within the amounts specified in the child-support schedule of Rule 32(A) and (C), Ala. R. Jud. Admin., there is a rebuttable presumption that the amount of child support determined by application of the Child Support Guidelines is the correct amount of child support to be awarded. Rule 32(A), Ala. R. Jud. Admin.
"[T]his court has consistently held that the application of Rule 32 is mandatory in child-support actions filed on or after *169 October 9, 1989. A trial court may deviate from the child-support guidelines in determining a child-support amount; however, any deviation is improper if it is not justified in writing. In Martin v. Martin, 637 So.2d 901, 902 (Ala.Civ.App. 1994), this court issued the following directive:
"`We hold, therefore, that the word "shall" in Rule 32(E), Ala. R. Jud. Admin., mandates the filing of a standardized Child Support Guidelines Form and a Child Support Obligation Income Statement/Affidavit Form.'
"Compliance with Rule 32(E) is mandatory, even though the trial court may find that the application of the guidelines would be unjust or inequitable. When the court determines that application of the guidelines would be manifestly unjust or inequitable, and then deviates from the guidelines in setting a support obligation, the court must make the findings required by Rule 32(A)(ii), Ala. R. Jud. Admin. When Rule 32(E) has not been complied with and child support is made an issue on appeal, this court may reverse the judgment of the trial court and remand the case for further proceedings in compliance with Rule 32."
Thomas v. Norman, 766 So.2d 857, 859 (Ala.Civ.App.2000) (citations omitted) (emphasis added).
The trial court's May 30, 2001, judgment purports to modify the father's child-support obligation. However, that judgment does not specify the amount of the father's total child-support obligation. The trial court's May 30, 2001, order requires the father to pay the work-related child-care costs for the parties' children. Work-related child-care costs are required to be added to the computation of the basic child-support obligation pursuant to Rule 32(B)(8), Ala. R. Jud. Admin. Although the record contains a Child Support Obligation Income Statement/Affidavit form and a Child Support Guidelines form prepared by the mother, the father did not submit those forms, as required by Rule 32(E), Ala. R. Jud. Admin. See Thomas v. Norman, supra. Rule 32(E), Ala. R. Jud. Admin., mandates the filing of "[a] standardized Child Support Guidelines form and a Child Support Obligation Income Statement/Affidavit form ... in each action to establish or modify child support obligations and [those forms] shall be of record and shall be deemed to be incorporated by reference in the court's child support order." See also Nelson v. Landis, 709 So.2d 1299, 1300 (Ala.Civ.App. 1998).
The record in this case does not contain the Child Support Guideline forms that are required pursuant to Rule 32(E), Ala. R. Jud. Admin., and the trial court's judgment does not specify whether the trial court intended to deviate from the Guidelines. See Thomas v. Norman, supra. Thus, the trial court's basis for determining the father's child-support obligation is unclear. "This court has unsuccessfully attempted, based on the evidence in the record, to determine the manner in which the trial court determined the father's child support obligation." Nelson v. Landis, 709 So.2d at 1300-01. Therefore, this court must reverse that part of the judgment of the trial court addressing the issue of child support. We must remand the case to the trial court for it to require the father to submit the required child-support forms reflecting his income at the time of the May 30, 2001, judgment. The trial court is instructed to determine child support based on the evidence received at the May 22, 2001, hearing, either in compliance with the Rule 32 Child Support Guidelines or stating the reasons for its *170 deviating from those guidelines. See Thomas v. Norman, supra; Nelson v. Landis, supra.
Each party's request for an attorney fee is denied.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
YATES, P.J., and CRAWLEY and PITTMAN, JJ., concur.
MURDOCK, J., concurs in the result.