Christina Lee Williamson Hollon ("the mother") and James Kendrick Williamson ("the father") were divorced by an August 16, 1994, judgment of the trial court. One child was born of the parties' marriage. The divorce judgment incorporated a settlement agreement reached by the parties. Pursuant to the terms of the divorce judgment, the mother was awarded custody of the parties' minor child, and the father was awarded a standard schedule of visitation. The trial court ordered the father to pay $400 per month in child support.
On August 2, 2001, the father filed a petition to modify custody and a petition seeking a pendente lite hearing regarding custody of the child. The mother answered and filed a motion for a more definite statement. The trial court granted the mother's motion for a more definite statement. The mother filed a motion to dismiss. On September 20, 2001, the mother filed a counter-petition seeking to modify the father's child-support obligation and visitation schedule. The trial court conducted a hearing on December 5, 2001. On December 6, 2001, the trial court entered an order in which it required the mother, who was then living in Louisiana, to return with the child to "the Montgomery area" within 30 days, and it reduced the father's child support obligation to $133 per month. The trial court's December *Page 351 
6, 2001, judgment made no other substantive changes to the divorce judgment. The mother filed a postjudgment motion; the trial court denied that motion. The mother appealed.
Where a trial court receives ore tenus evidence, its judgment based on that evidence is entitled to a presumption of correctness on appeal and that judgment will not be reversed absent a showing that the trial court abused its discretion or that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Scholl v. Parsons,655 So.2d 1060 (Ala.Civ.App. 1995). This "presumption of correctness is based in part on the trial court's unique ability to observe the parties and the witnesses and to evaluate their credibility and demeanor."Littleton v. Littleton, 741 So.2d 1083, 1085 (Ala.Civ.App. 1999).
The parties married on May 16, 1992. The one child born of the parties' marriage was nine years old at the time of the hearing in this matter.
The father has a college degree in marketing and is an insurance representative. The father testified that he had lived in Marbury 20 years. The father testified that the mother had lived in or near Marbury since the parties divorced. The father stated that the mother moved to Louisiana in August 2001. According to the father, the mother informed him she was moving when she picked the child up from his visitation with the father on a Sunday late in July 2001. The father stated that mother's current boyfriend lived in Louisiana and that he was aware that the child had stayed in Louisiana before August 2001.
The father testified that before the mother's relocation to Louisiana, he visited with the child several times per week. The father testified that from August 2001 until the December 5, 2001, hearing in this matter, he had seen the child only seven times. The father remarried in 1999. The father testified that the paternal grandmother and the child's stepmother provided after-school care for the child when the child lived in Alabama.
The father testified that he is concerned about the child's being removed from Alabama and away from the father and his extended family. The father testified that he lived next door to the paternal grandparents and that he had a large extended family in and near Marbury. The father stated that the child is close to his extended family. The father testified that the mother was a good mother and that he would not seek custody of the child if the mother would return to Alabama.
The paternal grandmother testified that prior to August 2001, when the mother relocated to Louisiana, she visited with the child two to three times per week. The paternal grandmother testified that she and the mother had a good relationship and that the mother had a key to the paternal grandparent's house. The paternal grandmother testified that she had seen the child on only one occasion from August 2001 until the December 5, 2001, hearing in this matter.
The mother testified that she had moved to Louisiana in June 2001 because she had visited Louisiana and discovered she liked Louisiana better than she liked Marbury. The mother also stated that she needed to move away from the father's family because they questioned her about her actions and decisions.
The mother testified that she had been fired from her job in Alabama. The mother testified that her employer had told her that she had a particular Friday off, and that after she had left her place of employment, someone left a message on her answering machine stating that she had to *Page 352 
report to work that day and if she did not, she would not have a job. The mother further testified that her employer telephoned her and told her that if she would come in and talk to him that he would reemploy her in her previous position. However, the mother testified that she chose to move to Louisiana instead. The mother testified that she has not worked since she and the child moved to Louisiana. The mother stated that she had applied for jobs in Louisiana, but at the time of the hearing in this matter, she remains unemployed.
The mother testified that she and the child lived in a house owned by her boyfriend and that her boyfriend and the maternal grandmother assisted her with buying food, clothing, shoes, and the child's school books. According to the mother, the boyfriend did not live in the house with her and the child.
The mother testified that she had remarried and divorced since her 1994 divorce from the father; the record indicates that the mother's divorce from her second husband was final in May 2001. The mother testified that she and her current boyfriend are not engaged, but that they have talked of getting married. The mother testified that she had no family in Louisiana. According to the mother, her family lives "all over." The mother testified that she had family in Georgia and Tennessee. The record indicates that the maternal grandmother lives in Tennessee.
The mother testified that the father's family visited with the child often when she lived in Alabama because it was convenient. The mother stated that she did not have to pay for child care when she lived in Alabama because the father's family provided after-school care for the child. According to the mother, the child told her he wanted to move to Louisiana. The mother testified that the child was enrolled in school in Louisiana and that he enjoyed his new school.
The child testified that he and his father hunted, fished, camped, and rode mountain bikes together. The child testified that he would like to live close to the father and to the father's extended family, but that he wanted to live with the mother.
On appeal, the mother asserts that the trial court abused its discretion in ordering her to move back to the Montgomery area. However, with regard to that issue in her brief on appeal, the mother cites several custody-modification cases and argues only that the father did not present sufficient evidence to justify a change of custody. Specifically, the mother asserts that the father presented insufficient evidence to meet his burden under Ex Parte McLendon, 455 So.2d 863 (Ala. 1984), for modifying custody. The trial court's December 6, 2001, order states
 "1. That the former wife shall, within 30 days from the date of this order, move back to the Montgomery area where she has been promised a job.
 "3. In the event the former wife fails to move back to the Montgomery area within the time frame as specified above, then, upon motion the court shall reopen this matter as it relates to custody."
The trial court's December 6, 2001, order did not modify custody of the child; it merely states that the trial court will reconsider its denial of the father's petition if the mother chooses to remain in Louisiana. Pursuant to the trial court's December 6, 2001, order, the child remains in the mother's custody and the father's original visitation schedule remains intact. In her brief on appeal, the mother focuses on whether the father met the McLendon standard in order to support a modification of custody. Although this court may or may not agree with the actions of the trial *Page 353 
court, this court concludes that the mother's argument as to that issue is premature.
The mother also asserts that the trial court erred in not imputing income to the father in its calculation of the father's child-support obligation. Pursuant to Rule 32(B)(5), Ala.R.Jud.Admin., "[i]f the [trial] court finds that either parent is voluntarily unemployed or underemployed, it shall estimate the income that parent would otherwise have and shall impute to that parent that income." "The determination of whether a parent paying child support is voluntarily underemployed or unemployed is discretionary with the trial court." Mitchell v. Mitchell,723 So.2d 1267, 1269 (Ala.Civ.App. 1998) (citing Griggs v. Griggs,638 So.2d 916 (Ala.Civ.App. 1994)).
The amount of child support awarded in the parties' August 16, 1994, divorce judgment was not in compliance with Rule 32, Ala.R.Jud.Admin.; however, that award was based on a settlement agreement entered into by the parties and incorporated into the divorce judgment. In her September 20, 2001, petition, the mother sought an award of child support in compliance with Rule 32, Ala.R.Jud.Admin. The record on appeal contains the father's Child Support Income Statement/Affidavit form which shows that the father had a monthly gross income of $923. The mother did not argue before the trial court nor did she present any evidence at the December 5, 2001, hearing indicating that the father was voluntarily underemployed. The mother testified that she was unemployed at the time of the December 5, 2001, hearing. The mother also testified that her former employer stated that she could have resumed her employment, but that she chose to relocate instead. Further, there was no testimony regarding the father's income at the December 5, 2001, hearing in this matter. The appellant has an affirmative duty to demonstrate error on the part of the trial court; this court will not presume such error exists.Greer v. Greer, 624 So.2d 1076, 1077 (Ala.Civ.App. 1993); see alsoPerkins v. Perkins, 465 So.2d 414 (Ala.Civ.App. 1984). The mother failed to present any evidence to the trial court regarding the father's income, and she did not argue to the trial court that it should impute income to the father. We conclude that the mother has not demonstrated that the trial court erred in not imputing income to the father for purposes of determining his child-support obligation. See Greer v. Greer, supra.
AFFIRMED.
Pittman, J., concurs.
Crawley and Murdock, JJ., concur in the result.
Yates, P.J., dissents.