906 So.2d 942 (2004)
L.A.M.
v.
B.M. and intervenors N.L. and W.L.
2030734.
Court of Civil Appeals of Alabama.
December 10, 2004.
Rehearing Denied February 4, 2005.
*943 Jeffery C. Duffey, Montgomery, for appellant.
E. Paul Jones, Alexander City, for appellee B.M.
PER CURIAM.
L.A.M. ("the mother") and B.M. ("the father") were divorced by an April 3, 1996, judgment of the trial court. One child, a daughter, was born of the parties' marriage; the child was almost four years old at the time of the parties' divorce. Pursuant to the divorce judgment, the mother was awarded custody of the child and the father was awarded visitation.
On July 10, 2003, the father filed a petition for a modification of custody. In his petition, the father alleged that the mother had subjected the minor child to an emotionally unstable environment because the mother lived with someone with whom she was romantically involved but to whom she was not married. The father also alleged that the mother left the child unsupervised after school and during school breaks. Simultaneously with his petition to modify, the father sought temporary custody of the child. The mother answered and counter-petitioned for an increase in child support and an award of an attorney fee. Following a pendente lite hearing, the trial court entered an order on August 22, 2003, in which it awarded the father temporary *944 custody of the child and ordered the parties and the child to participate in counseling.
On November 14, 2003, N.L. and W.L., the maternal grandparents, moved to intervene, seeking visitation with the child.[1] The trial court granted the motion to intervene. The trial court conducted a final hearing in this matter on February 18, 2004, at which it received ore tenus evidence. On February 27, 2004, the trial court entered a final judgment in which it awarded the father custody of the child, awarded the mother visitation with the child, and denied the maternal grandparents' petition for visitation. In its judgment, the trial court found that the father had met his burden of proof as required by Ex parte McLendon, 455 So.2d 863 (Ala.1984).
All of the parties filed postjudgment motions. The trial court granted the maternal grandparents' postjudgment motion and modified its February 27, 2004, judgment to award limited visitation to the maternal grandparents. The postjudgment motions filed by the mother and the father were denied. The mother timely appealed.
The testimony presented at both the pendente lite hearing and the final hearing reveals the following pertinent facts. The father and the mother were married for five years; they resided in Alexander City at the time of their divorce in 1996. In 2000, when the child was in third grade, the mother moved with the child to Montgomery to live in the home of P.M., the mother's lesbian partner; the mother transferred the child to a new school in the middle of the school year. The mother denied that her sole motivation for moving to Montgomery was so that she could live with P.M. The mother also denied that she was having an affair with P.M. at the time of the parties' divorce.
Copies of grade reports admitted into evidence at the hearings indicate that the child's grades did not change following the move to Montgomery. Testimony elicited at the hearings also reveals that the child maintained a level of extracurricular activities after moving to Montgomery similar to the level of activities she participated in while living in Alexander City. According to the mother, the child appeared to be happy living in Montgomery. The mother testified that the child never indicated that she did not want to be around P.M. or that she had a problem with the relationship between the mother and P.M. After moving to Montgomery, the mother maintained her employment in Alexander City. The mother works from 7:30 a.m. to 4:30 p.m.
The mother testified that she had been in a homosexual relationship with P.M. for three years. The mother testified that she, and the child, as well as the mother's son from a previous relationship, live in P.M.'s home. The mother testified that she has been discreet with her relationship with P.M.; she testified that she had not exhibited sexual behavior towards P.M. in front of the child. The mother admitted to having sexual relations with P.M. while the child was in the home.
The record indicates that both the mother and the father have exhibited problems with their tempers. According to the mother, on one occasion in May 2003 the father used derogatory curse words under his breath to describe her while at a ball field with children present; the father denied using those words to describe the mother. On cross-examination, the mother admitted to cursing at the father in his front yard during a September 2003 visitation *945 exchange. The mother testified that the child was not present during the September 2003 confrontation with the father.
The mother testified that the child should not be forced to visit the maternal grandmother. According to the mother, her stepfather, the maternal grandmother's husband, abused alcohol. The mother testified that, for this reason, the maternal grandparents should not be permitted to have overnight visitation with the child.
P.M. testified that she and the mother are in a romantic relationship and that they share a bedroom in her home. According to P.M., the child is aware that the two share one room. P.M. testified that she and the mother never flaunt their relationship and that they do not show "inappropriate" affection to each other while in front of the child. P.M. further testified that she had never represented herself to others as being the child's parent.
According to P.M., the father knew that she and the mother were in a homosexual relationship. P.M. testified that the father called the mother and her derogatory names. P.M. testified that the father's bad attitude towards her and the mother had been ongoing for at least two years.
After the parties divorced, the father remarried. The father and his new wife share their home with the wife's child from a previous marriage; the record does not reveal the age of that child. The father is employed with a railroad company where he works from 8 p.m. to 5 a.m., six days a week. The father testified that his work schedule is flexible, depending on the child's school events and extracurricular activities. According to the father, his wife stays with the child at night while he is at work.
The father testified that he sought custody of the child because of the mother's lesbian relationship, difficulties exercising visitation, and neglect by the mother. The father described several occasions in which the mother made it difficult for the father to pick up the child for visitation. The father also testified that on several occasions when he called the mother's home looking for the child at night, the person who answered the phone did not know where the child was or whom the child was with at that time. Testimony revealed that the child frequently walked to a neighbor's house down the street from the mother's home. The father testified that he would have sought a modification of custody regardless of the mother's sexual orientation.
According to the father, the maternal grandmother and the child have a good relationship. The father testified that he believed that the child's best interests would be served by maintaining a relationship with the maternal grandmother.
Pursuant to a court order, the father, the mother, and the child participated in counseling. The child participated in nine counseling sessions. Two letters submitted by the court-appointed psychologist were admitted into evidence at the final hearing. The first letter, written on December 11, 2003, indicated that the child was experiencing stress associated with the custody dispute. The psychologist noted that the child did not indicate a desire to live with either the father or the mother but appeared to be willing to accept the trial court's decision with regard to custody. The psychologist noted that the child did not report any awkwardness around P.M. In a January 21, 2004, letter, the psychologist noted that the child's mild depression and anxiety had abated after her living arrangements had stabilized.
The mother argues on appeal that the father failed to present sufficient evidence to warrant a change of custody pursuant to Ex parte McLendon, 455 *946 So.2d 863 (Ala.1984), and, thus, she argues, the trial court erred in awarding the father custody of the child. A parent seeking to modify custody must demonstrate that the proposed change in custody will materially promote the child's best interests and welfare. Ex parte McLendon, supra; Etheridge v. Etheridge, 712 So.2d 1089 (Ala.Civ.App.1997). The parent must also show that the good brought about by the proposed change in custody would more than offset the inherently disruptive effect caused by uprooting the child. Ex parte McLendon, supra. "`[T]he trial court is in the better position to consider all of the evidence, as well as the many inferences that may be drawn from that evidence, and to decide the issue of custody.'" Ex parte Patronas, 693 So.2d 473, 475 (Ala.1997)(quoting Ex parte Bryowsky, 676 So.2d 1322, 1326 (Ala.1996)). Therefore, where a trial court modifies custody after receiving ore tenus evidence, its judgment is entitled to a presumption of correctness on appeal, and that judgment will not be reversed absent a showing that the judgment is so unsupported by the evidence as to be plainly and palpably wrong. Ex parte Patronas, supra; Scholl v. Parsons, 655 So.2d 1060 (Ala.Civ.App.1995).
In support of her contention that the father failed to meet his burden of proof as stated in Ex parte McLendon, the mother asserts that the father's sole reason for seeking a custody modification was her involvement in a homosexual relationship and that that reason alone is insufficient to warrant a change in custody. We note, however, that the father based his petition on other facts as well, such as the mother's lack of supervision of the child.
The mother cites Ex parte J.M.F., 730 So.2d 1190 (Ala.1998), a case in which our supreme court held that the trial court did not abuse its discretion in transferring custody from the mother to the father based in part on the mother's homosexual lifestyle. In Ex parte J.M.F, the court concluded that "[w]hile the evidence shows that the mother loves the child and has provided her with good care, it also shows that she has chosen to expose the child continuously to a lifestyle that is `neither legal in this state, nor moral in the eyes of most of its citizens.'" 730 So.2d at 1196.
The mother argues that the United States Supreme Court's decision in Lawrence v. Texas, 539 U.S. 558, 123 S.Ct. 2472, 156 L.Ed.2d 508 (2003), overruling Bowers v. Hardwick, 478 U.S. 186, 106 S.Ct. 2841, 92 L.Ed.2d 140 (1986), and holding unconstitutional a Texas statute making sodomy a crime, effectively overruled our supreme court's holding in Ex parte J.M.F., supra. The mother asserts that the Supreme Court's decision in Lawrence "expressly confirms that moral disapproval of homosexual persons is not a legitimate basis for laws that disadvantage lesbians and gay men." However, contrary to the mother's assertion on appeal, the Supreme Court's decision in Lawrence does not overrule our supreme court's holding in Ex parte J.M.F. In Lawrence, the Supreme Court was asked to address the lawfulness of a Texas statute making it a crime for two persons of the same sex to engage in intimate, sexual conduct. The Court in Lawrence addressed the application of a criminal law. In Ex parte J.M.F., a child-custody-modification case, the Alabama supreme court reviewed evidence presented to the trial court and determined that the evidence supported removing custody of the child from the homosexual mother and placing the child in the custody of the father. In this case, the issue presented on appeal does not require us to address the lawfulness of a statute or the morality of homosexuality. Instead, we must determine whether the evidence presented to the trial court supports its judgment modifying custody of the child *947 pursuant to Ex parte McLendon. We answer that question in the affirmative.
The record reveals that the mother is engaged in a homosexual affair. At some point after the parties' divorce, the mother moved with the child from Alexander City to Montgomery to live with P.M.; although the mother denied that her relationship with P.M. was her sole motivation to move, the mother gave no other reason for moving with the child to Montgomery. The mother maintained her employment in Alexander City after her move to Montgomery. Before moving to Montgomery, the child had lived in Alexander City her entire life. The mother and P.M. share a bedroom in P.M.'s home; the mother admitted to having sexual relations with P.M. while the child was in the home. The record indicates that the mother and P.M. share parenting responsibilities of the child.
The record indicates that the father's motivation for filing his modification petition was not based solely on the mother's relationship with P.M. The father was aware of the mother and P.M.'s relationship before he filed the petition to modify custody of the child. The father's testimony and his modification petition indicate that the father would have the same concerns for the child's well being if P.M. was a man. The father testified that visitation disputes, neglect, and a concern for the child's safety, as well as the mother's relationship with P.M., gave him reason to file the modification petition. The record indicates that the mother made it difficult at times for the father to exercise visitation with the child. Testimony indicated that the child was left unsupervised at times. Evidence was also offered that indicated that the child's whereabouts were not always known when in the mother's custody. Given the evidence presented to the trial court and the presumption of correctness afforded the trial court's judgment, we affirm the judgment of the trial court as to this issue.
The mother also contends on appeal that the trial court's March 5, 2004, order, amending its February 27, 2004, judgment to award the maternal grandparents visitation is invalid. Specifically, the mother contends that the maternal grandfather is a stepgrandfather and not the child's natural grandfather and, thus, is not entitled to visitation. The mother does not argue that the trial court erred in its award of visitation rights to the maternal grandmother, and, therefore, we will not address that portion of the trial court's judgment on appeal. See Pardue v. Potter, 632 So.2d 470, 473 (Ala.1994)("Issues not argued in the appellant's brief are waived.").
Section 30-3-4.1, Ala.Code 1975, provides grandparents the right to petition for visitation with a grandchild. Pursuant to § 30-3-4.1(a), a grandparent is defined as "the parent of a parent of a minor child, the parent of a minor child's parent who has died, or the parent of a minor child's parent whose parental rights have been terminated when the child has been adopted pursuant to Section 26-10A-27, 26-10A-28, or 26-10A-30, dealing with stepparent and relative adoption."
The record on appeal indicates that the maternal grandmother's husband is not considered a grandparent within the definition found in § 30-3-4.1(a), Ala.Code 1975. The mother referred to the maternal grandmother's husband as her stepfather during her testimony. Moreover, there is no evidence that the maternal grandmother's husband ever adopted the mother. It is not within the province of this court to broaden the definition of a grandparent found in § 30-3-4.1(a) to include a parent's stepparent. Therefore, we must reverse that portion of the trial *948 court's visitation award that included an award of visitation to the maternal grandmother's husband and remand the cause for an entry of a judgment consistent with this opinion. Otherwise, the visitation award is affirmed.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
CRAWLEY, THOMPSON, and PITTMAN, JJ., concur.
YATES, P.J., and MURDOCK, J., concur in the result, without writings.
NOTES
[1] The maternal grandfather is the child's stepgrandfather.