On Application for Rehearing

BRYAN, Judge.
The opinion of July 29, 2011, is withdrawn, and the following is substituted therefor.
David Mark Hodgins (“the father”) appeals from a judgment entered by the Montgomery Circuit Court (“the trial court”) that modified certain aspects of the judgment that divorced the father and Sarah E. Hodgins (“the mother”).

Procedural History

The record indicates that the trial court entered a judgment divorcing the parties on November 24, 2008. The divorce judgment incorporated a settlement agreement entered into by the parties that set forth the parties’ agreement regarding all issues pending before the trial court, including custody of the one child born during the marriage, a girl born in September 2004. Pursuant to their agreement, the parties were awarded joint legal custody of the child and the father was awarded sole physical custody subject to the mother’s visitation rights. The agreement specifically provided:
“The [father] shall consult with the [mother] on all major decisions involving the health, education, and religion of the ... child, in an effort to resolve these issues by agreement. However, in the event the parties are unable to agree, the parties understand and acknowledge that the [father] by law shall have final decision making authority with regard to *119 those major decisions. Major decisions do not include day to day decisions.”
At the time the divorce judgment was entered, the father, who was in the United States Marine Corps, and the child lived in Beaufort, South Carolina, and the mother lived in Montgomery. Regarding visitation, the agreement provided that the mother was to have visitation with the child, supervised by her parents, once a month, from Tuesday afternoon until the following Sunday afternoon. The mother was responsible for the cost of transportation for her visitation periods, and, for that reason, the parties agreed to deviate from the Rule 32, Ala. R. Jud. Admin., child-support guidelines by setting the mother’s child-support obligation at $100 a month.
Finally, pursuant to the agreement incorporated into the divorce judgment, the father was “entitled to request that the [mother] submit to a ten panel hair follicle drug screen no more than once every three (3) months.... ”
The underlying proceeding from which this appeal was taken was initiated by the mother on April 13, 2009, when she filed a petition to modify custody of the child. The mother also requested, as a form of alternative relief, that she be awarded liberal unsupervised visitation with the child. The father filed an answer asserting that the mother’s custody-modification petition was frivolous, and he requested an award of attorney’s fees pursuant to the Alabama Litigation Accountability Act, § 12-19-270, Ala.Code 1975. At the mother’s request, the trial court subsequently appointed a guardian ad litem on behalf of the child.
In September 2009, the guardian ad li-tem and the father filed separate motions to suspend the mother’s visitation with the child pending the final hearing. As grounds, they asserted that the child had begun a pre-kindergarten program and that visitation with the mother was not in the child’s best interest because the child needed to be in school in order to improve her academic performance. The mother objected, and the trial court entered an order that maintained the mother’s visitation rights but that ordered the mother to attend one feeding-therapy session with the child in Montgomery and one feeding-therapy session with the child in Beaufort.[1]
On October 8, 2009, the father filed a counterclaim requesting, among other relief not pertinent to this appeal, that the mother’s visitation award be modified in light of the fact that the United States Marine Corps had ordered him to transfer to a military base in California.
The trial court conducted an ore tenus hearing regarding the mother’s and the father’s petitions to modify the divorce judgment over three days: October 26, 2009, November 24, 2009, and June 22, 2010. On June 25, 2010, the trial court entered an order that denied the mother’s custody-modification petition and held that the father remained the sole physical custodian of • the child. The trial court further held that the parties remained joint legal custodians of the child, but it modified the divorce judgment insofar as it allowed the father to have final decision-making authority over the child. The judgment stated: “If the parties cannot agree, the [father] shall have final authority over medical and extracurricular matters, and the [mother] shall have final authority over religious and educational matters.”
The trial court also modified the mother’s visitation with the child so that she was awarded the following unsupervised *120 visitation: four weeks of visitation with the child each summer, the “entirety of every spring break,” each Thanksgiving or fall break, one weekend of visitation in California each month, and any other time that the parties mutually agree upon. The parties were ordered to equally share the child’s Christmas break.
The trial court further held:
“Should, the [father] be placed on any ‘TDY’[2] period of more than thirty (30) days, the [mother] shall be provided the opportunity to have the child stay with her in Alabama during said ‘TDY’ period. If said ‘TDY period is thirty (30) days or less, then the [mother] may have visitation with the child during said period in California. The court is aware that this provision may need modification to adhere to the child’s school schedule once she reaches a certain age and grade level. The parties are encouraged to work together on this issue and come up with a solution that will benefit the child.”
Finally, the trial court ordered that the father no longer had the discretion to request that the mother submit to a drug screen and that the mother and the father were responsible for their own attorneys’ fees.
The father filed a motion to alter, amend, or vacate the judgment pursuant to Rule 59, Ala. R. Civ. P., and, after conducting a hearing, the trial court made the following pertinent modification to its judgment:
“[S]hould the [father] be placed on ‘TDY’ with the military, the provisions regarding visitation in Alabama for the [mother] shall not begin unless said TDY period is ninety (90) days or longer. Should the TDY period be thirty (30) days or less, the [mother] shall have the opportunity to visit the child in California during that period.”
The father subsequently appealed.

Facts

The record indicates that the mother had been indicted on two drug charges before the parties divorced — one misdemeanor and one felony. Since that time, the mother had participated in the pretrial-diversion program through the Montgomery County District Attorney’s office. The mother testified that she had taken a drug test at the father’s request in October 2008 and that she had voluntarily submitted to a drug test in July 2009; on both occasions, she had not tested positive for any drugs. The mother stated that the last time she had used illegal drugs was before the divorce judgment was entered. At the time of the June 2010 hearing, the mother’s charges had been nol prossed.
At the time of the October 2009 hearing, the mother was going to school at Virginia College, studying to be a surgical nurse. Charles Locklin, the child’s maternal grandfather (“the maternal grandfather”), testified that the mother had completely changed since the time of the divorce, that she was drug-free, and that she accepted her responsibilities. The mother lived with her parents, and the mother’s parents helped financially support the mother while she was in school and working part time.
The mother testified that the father had used the language of the divorce judgment, insofar as it gave him final decision-making authority over decisions concerning the child, to exclude the mother from discussions and decision-making situations regarding the child. Furthermore, according to the mother, all decisions concerning *121 the child were made by the father and, if she objected to the father’s decision, her objections were “null and void.” The maternal grandfather testified that the father had “closed out” the child from the mother, that the father had the attitude that he was the sole parent of the child, and that the father had the attitude that the mother should not have anything to do with the child.
When the child was born in September 2004, she had a serious medical condition related to her heart that required her to stay in the hospital for several months. Because breathing and feeding tubes had been inserted into the child after she was born, she developed an “oral aversion.” According to the mother and the father, the child had had a “g-tube” inserted, which had provided the child’s food directly to her digestive system instead of the child’s orally ingesting food and water. For this reason, the child has to see a specialist to learn how to chew and swallow food. The child saw a feeding therapist while she lived in Montgomery and an occupational therapist in Beaufort.
The record indicates that the mother believed that her objections and concerns regarding the child’s medical conditions were not properly presented to the child’s doctors by the father, and, according to the mother, the father did not ask her opinion before making medical decisions concerning the child. The mother stated that she learned that the child’s g-tube had been removed after it had already happened and that the father had failed to communicate with her regarding the child’s eating habits. The father stated that he did not know that the child’s g-tube was going to be removed beforehand and that he always notified the mother before major medical decisions were made. The father also testified that the mother was usually difficult to talk to, that she acted unreasonably, and that she generally did not cooperate with him.
In January 2009, the child’s doctor determined that the child needed to have a heart catheterization performed. According to the father, the mother “flat-out refused” to agree to let any doctor in South Carolina perform the procedure. According to the father, he decided to let a doctor in South Carolina perform the procedure because that was where he and the child lived. That procedure revealed that the child needed another heart surgery to replace a tube that had been inserted in her heart soon after she was born. The mother wanted to delay the surgery, but the father and the child’s doctor believed that there should be no delay so that the child could recover before school started. That procedure was performed in May 2009, and, by all accounts, the surgery was successful.
The mother stated that the child, who was five years old, was unable to “connect the dots,” was unable to color, and was unable to write the letter “A.” The father stated that the child’s academic progress was somewhat delayed because so much time and effort had been spent on teaching her how to eat. The child’s school district in South Carolina provided a service to the child called an Individualized Educational Program (“IEP”). The mother stated that she did not know anything about the child’s involvement in an IEP and that she did not know that the child was attending school until she was served with the father’s motion to suspend her visitation in light of the child’s school schedule. The mother also alleged that the father had identified his current wife, the child’s stepmother, as the child’s mother on the child’s school-registration forms. The mother testified that the child either calls her “Sarah” or “my other mommy.”
*122 The father admitted that he had initially-put his current wife’s name as the child’s mother on the child’s school-registration forms, but, he stated, he was under the impression that the school wanted to know who was the child’s “local mother.” The father stated that he gave the school the child’s birth certificate that listed the mother as the child’s mother as well as the court order that set forth the child’s custody arrangement. The father stated that he added the mother’s information to the forms before the child started school. The father admitted that the child called her stepmother “mom” and that he did not correct her when she said that; however, he also stated that the child, who was five years old, was aware that the mother was her mother.
Shortly before the October 2009 hearing, the father notified the mother that he was being transferred from Beaufort to a Marine base in San Diego, California. The mother stated that she was afraid that she would never see the child if the father moved with the child to San Diego. The mother stated that she believed that the father thought that the child would be fine if the mother was not involved in her life.
The mother stated that the child attends church with her during her visitation periods and that she had taken the child to a vacation Bible school during one visitation. The mother did not know whether the father took the child to church, but she wanted the child to be involved in church activities.
The mother stated that she would like to have the child with her in Montgomery if there was ever a time that the father was deployed or had a temporary-duty assignment away from his duty station. The father testified that he thought it would be best for the child to remain in his home with her stepmother and stepsiblings if he was ordered to a temporary-duty assignment and that he saw no reason to uproot the child.
At the time of the November 2009 hearing, the father still lived in Beaufort with the child, the child’s stepmother, and his four stepchildren. The father stated that he began taking the child to specialist as soon as he got custody of her in 2007, before the parties’ divorce. At that time, the child did not eat anything but relied on the g-tube for sustenance. The father stated that, as of November 2009, the child was 100% “table-food fed.” The father stated that the child is not totally proficient at chewing and swallowing and that she still needed instruction. The father stated that the mother had allowed the child to eat pureed meat and vegetables during visitations, which, he said, caused the child to regress in her progress of learning how to eat. The mother admitted that she had allowed the child to eat pureed food during visitation, but she also testified that she had offered the child solid food as well during visitation and that she knew how to feed the child. The record indicates that the mother attended a feeding-therapy session with the child in Beaufort, as ordered, but there is no indication in the record that the mother attended a feeding-therapy session with the child in Montgomery, as required by the trial court’s September 2009 order.
Terri Woosley, a pediatric occupational therapist, testified that she had seen the child for 67 therapy sessions between March 2005 and July 2007. Woosley stated that she had watched the child eat the day before the November 2009 hearing and that the child had made tremendous progress since her last visit in July 2007. Woosley stated that the mother’s method of feeding the child pureed food did nothing to make the child progress. Woosley testified that the child still needed to make *123 progress before she was able to eat properly.
In January 2010, the father and the child relocated to San Diego, along with the father’s current wife and her four children. The mother stated that the child attended year-round school in San Diego and that the child had several lengthy breaks from school throughout the year, including: approximately three weeks for spring break, approximately six weeks for summer, approximately one week for fall break, and approximately four weeks for Christmas. The father was willing to equally share the child’s school breaks, except the fall break, with the mother. The father stated that one week was too short a time for the child to fly from California to Alabama and back. The mother stated that she and the child needed more time together than only one-half of the child’s breaks from school.
In San Diego, the child was placed in kindergarten, instead of pre-kindergarten, and the father stated that there was a possibility that the child would be placed in kindergarten again at the start of the next school year because of lower-than-average performance. The father sent the mother a letter stating that he would like her input when the time came to decide on whether to allow the child to repeat kindergarten. The mother stated that she had contacted the child’s school and had notified the school that she was available for conferences by telephone if she was given advanced notice. The mother requested that she be allowed to be involved in the meetings concerning the IEP developed for the child by her school in San Diego.
At the time of the June 2010 hearing, the child had had one IEP meeting in San Diego, and the father testified that he had notified the mother that the meeting was going to take place. However, the mother did not receive the notice until after the IEP meeting had taken place. The father stated that the child had been provided speech and language services through her school and that he did not know what else he could do to help the child catch up in school. The father stated the child’s school was evaluating the child’s progress and that school officials would eventually tell him what services were available to help the child catch up with her classmates. The mother stated that she was not involved in the child’s IEP and that she was concerned about the child’s progress in school.
At the close of trial, the guardian ad litem recommended that any visitation with the mother in Montgomery occur only when the child had at least seven days to visit, including two days of travel. The guardian ad litem also recommended that the trial court include explicit orders regarding visitation and asked that the child have at least two days in San Diego after visitation in Montgomery to readjust her schedule before she started school.

Issues

On appeal the father raises five issues for this court’s consideration: (1) whether the trial court erred in awarding the mother final decision-making authority over religious and educational matters; (2) whether the trial court erred in granting the mother visitation with the child when the father was placed on TDY for 90 days or longer; (3) whether the trial court erred in setting forth the mother’s award of visitation; (4) whether the trial court erred by removing the provision allowing the father to request that the mother submit to a drug screen; and (5) whether the trial court erred in failing to order the mother to pay the father’s attorney’s fees.

Standard of Review

“When ore tenus evidence is presented, a presumption of correctness exists *124 as to the trial court’s findings on issues of fact; its judgment based on these findings of fact will not be disturbed unless it is clearly erroneous, without supporting evidence, manifestly unjust, or against the great weight of the evidence. J & M Bail Bonding Co. v. Hayes, 748 So.2d 198 (Ala.1999); Gaston v. Ames, 514 So.2d 877 (Ala.1987). When the trial court in a nonjury case enters a judgment without making specific findings of fact, the appellate court ‘will assume that the trial judge made those findings necessary to support the judgment.’ Transamerica Commercial Fin. Corp. v. AmSouth Bank, 608 So.2d 375, 378 (Ala.1992). Moreover, ‘[ujnder the ore tenus rule, the trial court’s judgment and all implicit findings necessary to support it carry a presumption of correctness.’ Transamerica, 608 So.2d at 378. However, when the trial court improperly applies the law to facts, no presumption of correctness exists as to the trial court’s judgment. Allstate Ins. Co. v. Skelton, 675 So.2d 377 (Ala.1996); Marvin’s, Inc. v. Robertson, 608 So.2d 391 (Ala.1992); Gaston, 514 So.2d at 878; Smith v. Style Advertising, Inc., 470 So.2d 1194 (Ala.1985); League v. McDonald, 355 So.2d 695 (Ala.1978). ‘Questions of law are not subject to the ore tenus standard of review.’ Reed v. Board of Trustees for Alabama State Univ., 778 So.2d 791, 793 n. 2 (Ala.2000). A trial court’s conclusions on legal issues carry no presumption of correctness on appeal. Ex parte Cash, 624 So.2d 576, 577 (Ala.1993). This court reviews the application of law to facts de novo. Allstate, 675 So.2d at 379 (‘[Wjhere the facts before the trial court are essentially undisputed and the controversy involves questions of law for the court to consider, the [trial] court’s judgment carries no presumption of correctness.’).”
City of Prattville v. Post, 831 So.2d 622, 627-28 (Ala.Civ.App.2002).

Discussion

I. Designation of Final Decisioiu-Making Authority
The father argues that the trial court erred in awarding the mother final decision-making authority over issues related to education and religion because such a modification was not in the best interest of the child considering the physical distance between the mother and the child, the indication in the record that the mother reacted unreasonably to the father’s attempts to discuss the child, and the evidence indicating that the parties did not communicate well.
In the parties’ divorce judgment, the parties were awarded joint legal custody of the child. “Joint legal custody” is defined in § 30-3-151(2), Ala.Code 1975, as follows:
“Both parents have equal rights and responsibilities for major decisions concerning the child, including, but not limited to, the education of the child, health care, and religious training. The court may designate one parent to have sole power to make certain decisions while both parents retain equal rights and responsibilities for other decisions.”
In its June 2010 judgment, the trial court did not modify the parties’ status as joint legal custodians; the judgment only modified which party was designated to make the final decisions as to certain matters in the event that the parties could not otherwise agree. Pursuant to § 30-3-151, the trial court “may designate one parent to have sole power to make certain decisions .... ” (Emphasis added.) Thus, the trial court, pursuant to § 30-3-151, exercised its discretion and granted the mother final decision-making authority over edu *125 cational and religious matters and granted the father final decision-making authority over medical and extracurricular matters. This court will not reverse a judgment concerning a matter left to the sound discretion of the trial court unless the trial court exceeds its discretion or unless the judgment is plainly or palpably wrong. See Romano v. Romano, 703 So.2d 374, 375 (Ala.Civ.App.1997). To the extent that the trial court’s judgment modified the legal-custody arrangement between the parties, this court has held that, in order “ ‘[t]o modify legal custody, the trial court need only find that the best interests of the child are served by the modification.’ ” West v. Rambo, 786 So.2d 1138, 1141 (Ala.Civ.App.2000) (quoting Harris v. Harris, 775 So.2d 213, 215 (Ala.Civ.App.1999)).
Although the parties’ ability to cooperate with one another to make decisions about the child together is a factor to consider in determining a proper joint-custody award, see § 30-3-152(a)(2), Ala. Code 1975, we cannot conclude that the parties’ inability to communicate about decisions concerning the child is a valid ground for reversing the judgment of the trial court in this particular case. There was sufficient evidence presented to support a conclusion by the trial court that the father used his position as the parent with final decision-making authority to exclude the mother from having a voice in the decision-making process when a major decision arose concerning the child. The trial court could have concluded that the best interests of the child would be served by having both the mother and the father meaningfully involved in major decisions concerning the child and that the best way to accomplish this was by allowing each parent to have final decision-making authority over different aspects of the child’s life.
The father argues that the physical distance between the mother and the child makes it impractical for the mother to have final decision-making authority over educational matters because it is unlikely that the mother will be able to travel to San Diego to participate in the child’s IEP meetings or otherwise assist the child with her daily schoolwork. However, we see no reason why the mother would have to be physically present at an IEP meeting in order to participate. It is not difficult to conceive of ways of utilizing available technology (such as the speakerphone function of a telephone) that would allow the mother to participate in an IEP meeting conducted in San Diego while she was in Montgomery. Furthermore, awarding the mother final decision-making authority over educational matters is not for day-today decisions, and, as emphasized in the trial court’s order on the father’s post-judgment motion, final decision-making authority is to be used as a last resort when the parties cannot otherwise agree after discussing the matter between themselves.
The father also argues that the trial court’s decision to award the mother final decision-making authority over religious matters is unsupported by the evidence. Although there was very little testimony regarding religion in general, we cannot conclude that the small quantity of testimony regarding religion should result in a reversal of the trial court’s judgment. The record indicates that religious matters are important to the mother, and we find no error in the trial court’s determination that the best interests of the child would be served by awarding the mother final decision-making authority over religious matters.
The father also argues that trial court’s decision to award the mother final decision-making authority over religious matters is a violation of his right to free *126 dom of religion provided by the First Amendment to the United States Constitution. However, as the mother points out in her brief, the father’s citation to authority supporting only general propositions of law is insufficient to support reversal of the trial court’s judgment. See Beachcroft Props., LLP v. City of Alabaster, 901 So.2d 703, 708 (Ala.2004) (quoting Geisenhoff v. Geisenhoff, 693 So.2d 489, 491 (Ala.Civ.App.1997)) (“Authority supporting only ‘general propositions of law’ does not constitute a sufficient argument for reversal.”); Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d 1, 9 (Ala.2007) (holding that the appellant’s three-sentence argument and citation to one case in support of a general proposition of law was insufficient to invoke review of the argument raised by the appellant); and Rule 28(a)(10), Ala. R.App. P. Accordingly, we will not consider that argument. Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d at 9.
Furthermore, to the extent that the father argues that the trial court’s judgment should be reversed because the mother did not request a modification of the divorce judgment insofar as it provided that the father had final decision-making authority over the child, we will not consider that argument because our review of the record reveals that this argument was not first presented to the trial court for its consideration. See Andrews v. Merritt Oil Co., 612 So.2d 409, 410 (Ala.1992) (“[An appellate cjourt cannot consider arguments raised for the first time on appeal; rather, our review is restricted to the evidence and arguments considered by the trial court.”).
Accordingly, that part of the trial court’s judgment awarding the mother final decision-making authority over educational and religious matters is affirmed.[3]
II. Visitation During a Temporary-Duty Assignment
The father also argues that the trial court erred in awarding the mother -visitation with the child when the father has a temporary-duty assignment for 90 days or longer — a provision the father describes as an “automatic -visitation reversionary clause.”
It is well settled that the law disfavors judgments that provide for the automatic change of physical custody upon the occurrence of some future event because such provisions are “premised on mere speculation of what the best interests of the children may be at a future date.” Hovater v. Hovater, 577 So.2d 461, 463 (Ala.Civ.App.1990) (holding that a custodial reversion-ary clause based on the mother’s remaining in a certain school district was of no effect). See also Korn v. Korn, 867 So.2d 338, 345 (Ala.Civ.App.2003) (reversing a judgment that set forth an automatic reversion of custody to the former husband if the former wife left the United States). This court has applied the same principle to an automatic modification of visitation when there was no evidence indicating that there would be a change in circumstances warranting a modification of visitation at some future time. See Long v. Long, 781 So.2d 225 (Ala.Civ.App.2000) (reversing a *127 judgment that automatically removed the restriction requiring the mother’s visitation to be supervised after the passage of six months). But see Kovakas v. Kovakas, 12 So.3d 693, 698 n. 5 (Ala.Civ.App.2008) (indicating that an automatic modification of the father’s visitation when the child began kindergarten was distinguishable from Hovater and Korn, supra, because those cases involved an automatic modification of custody as opposed to an automatic modification of visitation).
In the present case, the mother argues that the provision of the trial court’s judgment that allows her to have visitation with the child if the father has a temporary-duty assignment for 90 days or more is more akin to a judgment allowing extra visitation in the event of an extra holiday or time off from school. The mother maintains that the trial court acted within its discretion by allowing her to exercise extended visitation with the child in the event that the father is unavailable to care for the child because he has been ordered away from his duty station for 90 days or more.
It is well settled that the determination of a noncustodial parent’s visitation rights is left to the sound discretion of the trial court and that a court’s determination of visitation will not be reversed on appeal unless the trial court exceeds it discretion or unless the judgment is plainly or palpably wrong. Long, 781 So.2d at 226 (citing E.W. v. Montgomery Cnty. Dep’t of Human Res., 602 So.2d 428 (Ala.Civ.App.1992)). Furthermore, regarding a determination of visitation, “[t]he court’s discretion is guided by what will protect and enhance the best interests and welfare of the child.” Id.
We agree with the father that the trial court’s judgment allowing the mother to have visitation with the child in the event that he is called away from his duty station by the Marine Corps for 90 days or more is analogous to judgments that call for an automatic modification of custody or visitation upon the occurrence of some future event. Such a provision cannot possibly take into account what the best interests of the child will be at the point in the future when the father is ordered away from his duty station for 90 days or more. The record indicates that the child is enrolled in year-round school in San Diego, and there is no indication that any school in Montgomery follows a similar schedule. Thus, in the present case, if the father is called away from his duty station for more than 90 days by the Marine Corps, the child would be automatically removed from her environment in San Diego and placed in Montgomery with the mother without consideration of the effect that such a change would have on the child. Our case-law strongly disfavors such a change without consideration of the best interests of the child at the time that the proposed change would take place. See Korn, 867 So.2d at 344-45 (discussing Ex parte Monroe, 727 So.2d 104 (Ala.1999), in which custody of a child was modified, based on the custodial parent’s move from Alabama to Michigan, after an ore tenus hearing was conducted, and recognizing that the judgment in Monroe “was based on evidence as to the child’s current best interests, not upon speculation as to what his best interests might be at some point in the future”).
Our decision in no way affects the mother’s right, upon learning that the father is required to spend a significant period away from his duty station, to petition the trial court for some form of visitation or custody that would allow her to care for the child while the father is unavailable to do so. At that time, the trial court would be able to evaluate the child’s circumstances, as they exist at that time, and to *128 make a decision that promotes the best interests of the child. See Hall v. Hall, 577 So.2d 469, 470 (Ala.Civ.App.1990) (the primary concern in cases concerning a child’s custody and visitation schedule is determining what arrangement promotes the best interests of the child).
Accordingly, because the trial court’s judgment, insofar as it automatically places the child with the mother in the event that the father has a temporary-duty assignment for 90 days or more, fails to account for what arrangement will serve the best interests of the child at the time the father is required to leave his duty station, we reverse the judgment of the trial court and remand the cause with instructions to the trial court to enter a judgment consistent with this opinion.
III. Visitation
The father next argues that the trial court’s award of visitation to the mother was error because it awarded the mother visitation during substantially all the child’s breaks from school.
As noted above, the determination of a noncustodial parent’s visitation is left to the trial court’s discretion, and this court will not reverse the trial court’s determination unless it is shown that the trial court exceeded its discretion or that its judgment is plainly or palpably wrong. See Long, 781 So.2d at 226. Moreover, we note that “ ‘[t]he trial court is entrusted to balance the rights of the parents with the child’s best interests to fashion a visitation award that is tailored to the specific facts and circumstances of the individual case.’ ” Ratliff v. Ratliff, 5 So.3d 570, 586 (Ala.Civ.App.2008) (quoting Nauditt v. Haddock, 882 So.2d 364, 367 (Ala.Civ.App.2003)).
The father argues that the visitation provision is contrary to the best interests of the child because it awards the mother visitation during the majority of all the child’s breaks from school and prevents the father from ever spending Thanksgiving holidays with the child. This case presents a particularly unique set of circumstances because the child and the mother live on opposite sides of the country and the child is enrolled in year-round school that provides several long breaks throughout the year. The trial court, in its judgment, specifically stated:
“The court’s intent in modifying the visitation is to provide meaningful time between the child and the [mother], not to detract from the [father]’s relationship or time with the child. The court is aware that the [father] will miss important periods of vacation time[;] however, the court feels this is necessary in order to maintain a solid relationship between the child and the [mother].”
After hearing three days of testimony, and considering the significant physical distance between the child’s home and the mother’s home, the trial court concluded that a visitation award that allowed the mother to visit with the child during the majority of the child’s breaks from school served the best interests of the child because it would allow the mother and the child to “maintain a solid relationship.” Furthermore, the trial court could have concluded that the father still had a significant amount of time with the child considering he had every evening and weekend of the school year in addition to two weeks in the summer and two weeks during the child’s Christmas holidays to spend with the child. Accordingly, we cannot conclude that the trial court erred in awarding the mother visitation with the child during the majority of the child’s breaks from school.
The father also argues that the visitation award, specifically the mother’s right to have visitation with the child during the child’s fall break, or Thanksgiving *129 holidays, is against the best interests of the child because it is too short of a break from school and does not allow any time for the child to recover from traveling before she starts school again. According to the child’s school calendar, the child’s fall break, including weekends, consists of a nine-day break from school. Other than the father’s testimony that he thought that one week was not enough time for the child to fly to Montgomery and back to San Diego, there was no indication that the child had ever attempted a visit to Montgomery for only one week or that the child’s best interests would not be served by allowing her to visit the mother for only a relatively short time. Accordingly, we cannot conclude that the trial court exceeded its discretion by awarding the mother visitation with the child during the child’s fall break.
The father also argues that the trial court erred by failing to specifically set forth in its judgment when the mother’s visitation periods begin and end. For example, the trial court’s judgment states that the mother is awarded visitation with the child “for the entirety of every spring break.” According to the calendar of the child’s school breaks, the child’s spring break began on April 4, 2010 (a Monday), and continued until April 26, 2010 (a Tuesday). However, the child’s last day of school was Friday, April 1, 2010, and her first day back to school was Wednesday, April 27, 2010. The father argues that the trial court’s judgment is unclear as to whether the mother gets visitation with the child starting on her last day of school (April 1st) or on the first day of her spring break (April 4th).[4] The father also argues that the trial court failed to allow the child at least two days at home in California before school resumed. We agree that, in this particular case, because of the likelihood that travel plans will be made several weeks or months in advance of a scheduled visitation, it was error for the trial court not include a more specific visitation schedule that allowed the child some time at home in California before school resumed. Accordingly, the trial court’s judgment, insofar as it failed to enter a more specific visitation schedule, is reversed. We remand the cause with instructions to the trial court to amend its judgment consistent with this opinion.
IV. The Drug Screens
Next, the father argues that the trial court erred in removing his ability to request that the mother submit to a drug screen. In support of his argument, the father cites Ex parte McLendon, 455 So.2d 863 (Ala.1984), for the proposition that the mother failed to prove a “material change warranting change in the drug test requirement.” However, nothing in Ex parte McLendon supports the father’s argument that the mother was required to prove a material change in circumstances in order to remove the drug-screen provision of the divorce judgment, nor is there anything in Ex parte McLendon to support the father’s argument that the trial court acted outside its discretion by removing the drug-screen provision. Because the father has failed to cite any authority to support his argument on appeal, we will not consider it. See Rule 28(a)(10); and Jimmy Day Plumbing & Heating, Inc. v. Smith, 964 So.2d at 9. Accordingly, that part of the trial court’s judgment removing the father’s right to request that the mother submit to a drug screen is affirmed.
*130 V. The Father’s Attorney’s Fees
Finally, the father argues that the trial court erred in failing to order the mother to pay all or part of his attorney’s fees, which, according to the father, totaled approximately $20,000.
“ ‘Whether to award an attorney fee in a domestic relations case is within the sound discretion of the trial court and, absent an abuse of that discretion, its ruling on that question will not be reversed. Thompson v. Thompson, 650 So.2d 928 (Ala.Civ.App.1994). “Factors to be considered by the trial court when awarding such fees include the financial circumstances of the parties, the parties’ conduct, the results of the litigation, and, where appropriate, the trial court’s knowledge and experience as to the value of the services performed by the attorney.” Figures v. Figures, 624 So.2d 188, 191 (Ala.Civ.App.1993).’ ”
Lackey v. Lackey, 18 So.3d 393, 402 (Ala.Civ.App.2009) (quoting Glover v. Glover, 678 So.2d 174, 176 (Ala.Civ.App.1996)).
The father argues that the mother should have been ordered to pay at least a portion of his attorney’s fees for several reasons: he was forced to defend the mother’s “frivolous” custody-modification action; the actions of the mother throughout the proceedings below operated to unnecessarily extend the action, which caused him to incur additional attorney’s fees; he, unlike the mother, was not being supported by his parents; he was still paying the mortgage on the former marital residence; and the mother contributed only $100 a month to the support of the child.
The mother filed the custody-modification action based on an allegation that the child appeared “emaciated” after several months of being in the sole physical custody of the father. Woosley testified that, considering the difficulty the child had experienced with eating, and considering that the child had “rolls” of skin when the mother last saw the child, it was not unreasonable for the mother to be concerned about the child’s ■ appearance. Although there was no indication that the child’s weight loss was attributable to anything other than a growth spurt, the trial court could have concluded that the mother’s custody-modification petition was not frivolous. See Black’s Law Dictionary 692 (8th ed.2004) (defining “frivolous” as “[l]aeking a legal basis or legal merit”).[5] Moreover, in that same petition, the mother requested alternative relief in the form of modification of her visitation rights, which was granted by the trial court.
The record indicates that the mother earned approximately $995 a month working part time while she was in school and that she relied on support from her parents. The record does not include the amount of the father’s gross monthly income at the conclusion of trial. The record further indicates that the mother was required to pay $2,310 to the guardian ad litem, and there is no indication that the father was required to contribute to the payment of the guardian ad litem’s fees. Although the mother’s custody-modification petition was denied, the mother did succeed in obtaining far greater, and unsupervised, visitation rights with the child. Considering the factors set forth in Lackey, supra, we cannot conclude that the trial court exceeded its discretion in failing to order the mother to pay part or all of the father’s attorney’s fees. Accordingly, *131 that aspect of the trial court’s judgment is affirmed.

Conclusion

The judgment of the trial court is affirmed in part and reversed in part, and the ease is remanded to the trial court for further proceedings consistent with this opinion. The father’s request for an award of attorney’s fees on appeal is denied.
APPLICATION OVERRULED; OPINION OF JULY 29, 2011, WITHDRAWN; OPINION SUBSTITUTED; AFFIRMED IN PART; REVERSED IN PART; AND REMANDED WITH INSTRUCTIONS.
PITTMAN and THOMAS, JJ., concur.
THOMPSON, P.J., and MOORE, J., concur in the result, without writings.

. As explained in detail infra, the child developed an oral aversion shortly after her birth, and she attended therapy to learn how to chew and swallow food.

. According to the record, "TDY” refers to a temporary-duty assignment through the Marine Corps that requires the father to be away from his duty station.

. The father raises for the first time in his application for rehearing several arguments regarding the propriety of the trial court’s judgment designating final decision-making authority over educational and religious matters to the mother. Because the father did not make those arguments in his original submission to this court, we cannot consider them on rehearing. See Water Works & Sewer Bd. of Selma v. Randolph, 833 So.2d 604, 608 (Ala.2002) (opinion on rehearing) (refusing to consider arguments made on rehearing when the petitioner failed to make the argument, and include supporting authority for the argument, in its initial brief on appeal).

. The father makes the same argument regarding the ambiguity of the start and end dates of the mother’s visitation with the child during the child's fall break.

. On appeal, the father has not argued that the trial court should have awarded him attorney's fees pursuant to the Alabama Litigation Accountability Act, § 12-19-270, Ala. Code 1975.