THOMPSON, Presiding Judge.
This is the second time these parties have been before this court. A child was born of a relationship between D.O. (“the father”) and T.C.S. (“the mother”); the mother and the father never married. On October 28, 2009, the Marion Juvenile Court (“the juvenile court”) entered a judgment awarding the mother and the father joint legal and physical custody of the child; that judgment incorporated an agreement reached by the parties.
In January 2011, the father filed in the juvenile court a petition to modify custody of the child. On June 27, 2011, the juvenile court entered a judgment awarding the father sole legal and physical custody of the child and awarding the mother visitation at the father’s discretion. The mother appealed the June 27, 2011, judgment, and this court affirmed the judgment, without an opinion, on the basis that the mother had failed to raise before the juvenile court the issues she asserted on appeal. T.C.S. v. D.O. (No. 2100932, March 9, 2012), 129 So.3d 1049 (Ala.Civ.App.2012) (table).
In June 2012, the mother filed a petition in which she sought a more definitive award of visitation with the child, to prevent the father from relocating with the child, and to require the father to return the child to counseling. The father answered and counterclaimed, seeking an award of child support. The juvenile court conducted an ore tenus hearing over the course of three days.
On September 6, 2013, the juvenile court entered an order awarding the mother a standard schedule of visitation and ordering the mother to pay child support. The mother filed a purported postjudgment motion, and the juvenile court denied that motion. See SCI Alabama Funeral Servs., Inc. v. Hester, 984 So.2d 1207, 1208 n. 1 (Ala.Civ.App.2007) (“A valid postjudgment motion may only be taken in reference to a final judgment.”). The mother then appealed. This court reinvested the juvenile court with jurisdiction to enter a final judgment, if appropriate. On April 8, 2014, the juvenile court entered an order denying the mother’s claim seeking to prevent the relocation of the child’s principal residence and her request that the child be returned to counseling. That April 8, 2014, order disposed of the remaining pending claims of the parties, and, therefore, it constituted the final judgment in this matter. Stockton v. CKPD Dev. Co., 936 So.2d 1065, 1069-70 (Ala.Civ.App.2005).
The mother first argues that the juvenile court erred in fashioning its child- *420 support award. In ordering the mother to pay $200 per month in child support, the juvenile court expressly stated that the award did not comply with the Rule 32, Ala. R. Jud. Admin., child-support guidelines; the juvenile court concluded that the application of those guidelines “would not be appropriate due to the mother’s limited employment at this time.” The mother, however, argues that, although it appears that the juvenile court intended to lessen her child-support obligation by deviating from the child-support guidelines, the record contains no method of determining whether that deviation .actually lessened her child-support obligation or if it constituted an increase in the child-support obligation prescribed under the Rule 32 guidelines. The mother points out that the parties did not submit to the juvenile court the child-support forms required by Rule 32, and that the juvenile court did not incorporate any child-support form into its judgment. See Rule 32(E), Ala. R. Jud. Admin. (“A standardized Child-Support Guidelines form (Form CS-42 as appended to this rule) and a Child-Support-Obligation Income Statement/Affidavit form (Form CS^U as appended to this rule) shall be filed in each action to establish or modify child-support obligations and shall be of record and shall be deemed to be incorporated by reference in the court’s child-support order.” (emphasis added)).
The application of the Rule 32 child-support guidelines is mandatory. Thomas v. Norman, 766 So.2d 857, 859 (Ala.Civ.App.2000). There is a rebuttable presumption that the amount of child support determined through the calculations on the required CS-42 child-support form is the correct amount of child support to be awarded. Ex parte Moore, 805 So.2d 715, 719 (Ala.2001). A court may deviate from the amount of child support recommended by the calculation pursuant to the CS-42 form, but the trial court must make written findings of fact to support that deviation. Id.; Rule 32(A)(1), Ala. R. Jud. Admin.
In Abbett v. Treadwell, 816 So.2d 477 (Ala.Civ.App.2000), the trial court stated that it was deviating from the child-support guidelines by ordering that the husband pay no postminority support for the parties’ disabled adult child. In that case, the trial court had concluded that any support paid by the husband might decrease the Social Security disability benefits the child was receiving. However, the trial court had not completed the required child-support forms before reaching its decision to deviate from the child-support guidelines. This court reversed, concluding that the trial court had not complied with Rule 32 when it failed to complete the required forms. This court explained that, without those forms, “we cannot determine how much child support the husband might be obligated to pay on behalf of his son, and this amount might be substantially more than any Social Security benefits received by the child.” Abbett v. Treadwell, 816 So.2d at 481.
In another case, this court explained:
“[Ijnherent in complying with Rule 32, Ala. R. Jud. Admin., is complying with Rule 32(A)(ii), if the facts support such a determination, i.e., that application of the guidelines, stating the criteria, would be manifestly unjust or inequitable. We further note that compliance with Rule 32(E), the filing of the forms, is mandatory even if the trial court found that application of the guidelines would be unjust or inequitable. Otherwise, an appellate court may be unable to review that finding by the trial court.”
Martin v. Martin, 637 So.2d 901, 903 (Ala.Civ.App.1994) (some emphasis omitted; some emphasis added).
*421 In this case, the record contains no indication of the correct calculation of child support pursuant to the child-support guidelines. Although the juvenile court expressly stated that it was deviating from the child-support guidelines, the judgment and the record on appeal contain no determination of the amount of child support due under the proper application of the child-support guidelines. Therefore, the record contains no indication regarding the amount of the deviation from the application of those guidelines. As mentioned, “[compliance with Rule 32(E) is mandatory, even though the trial court may find that the application of the guidelines would be unjust or inequitable.” Thomas v. Norman, 766 So.2d at 859. Accordingly, we reverse the juvenile court’s judgment as to child support, and we remand this action for the juvenile court to complete the forms required under Rule 32(E) and to calculate the parties’ respective child-support obligations under the child-support guidelines. If, on remand, after properly applying the Rule 32 child-support guidelines, the juvenile court determines that the amount of the mother’s child-support obligation under those guidelines is unjust or inequitable, it has the discretion to deviate from those guidelines and to expressly state the reason for that deviation. Rule 32(A), Ala. R. Jud. Admin.; Suggs v. Suggs, 54 So.3d 921, 927 (Ala.Civ.App.2010).
The mother also argues that the juvenile court erred in denying her claim seeking joint legal, as opposed to joint physical, custody of the child.[1] In most of the custody-modification actions that come before this court, the noncustodial parent seeks to modify an award of sole or primary physical custody of the child, such as the physical custody awarded to the father in this case. In such a case, the petitioning parent is required to demonstrate that there exists a material change in circumstances such that a change in .custody would promote the child’s best interests and that the disruptive effects of the change in custody would be offset by the benefits of that change. See Ex parte McLendon, 455 So.2d 863, 866 (Ala.1984). However, a change in the legal custody of a child must be based on the child’s best interests. Harris v. Harris, 775 So.2d 213, 215 (Ala.Civ.App.1999). In Harris, this court explained:
“A shift in parental involvement in the major decisions affecting the child, which is what a change in legal custody accomplishes, would not disrupt the child or his or her living environment in any measurable way. Thus, we conclude that our supreme court, when developing the McLendon standard, contemplated that it would apply only to modifications of physical custody and not to modifications of legal custody, as those terms are now defined in § 30-3-151[, Ala.Code 1975], To modify legal custody, the trial court need only find that the best interests of the child are served by the modification. See § 30-3 — 152[, Ala.Code 1975].”
775 So.2d at 215 (some emphasis omitted; some emphasis added). The determination whether to modify legal custody of a child is within the sound discretion of the *422 trial court, and this court will not reverse the trial court’s decision on that issue unless the judgment is plainly or palpably wrong. Hodgins v. Hodgins, 84 So.3d 116, 125 (Ala.Civ.App.2011).
The juvenile court heard ore tenus evidence on November 13, 2012, April 4, 2013, and August 8, 2013. The record indicates the following pertinent facts. The mother has a total of three children, none of whom is in her custody. After the entry of the June 27, 2011, judgment awarding the father sole legal and physical custody of the child and the mother visitation at the father’s discretion, the father afforded the mother only two hours’ visitation on alternating weekends.[2] The record indicates that the father selected the times and locations of those visitations and that either he or a family member stayed nearby to supervise the mother’s visitation with the child.
The father testified that he objected to the men with whom the mother had had relationships after the entry of the June 27, 2011, judgment. The father presented evidence indicating that the mother had been involved with four men between December 2011 and November 2012; he stated that each of those men had a felony criminal record. One of those men had been convicted of a sexual offense against a 12-year-old child.
The father also stated that the mother’s lifestyle was unstable, and he presented evidence indicating that she had moved four times since the entry of the most recent judgment. We note that the father married at some point after the parties separated, and he and the child moved into a house owned by his wife. The father testified that he had lived at two residences since the entry of the June 2011 judgment and that, at the time of the hearing in this matter, he was considering relocating again.
The father testified that the mother was difficult and confrontational, and the mother testified that the father was controlling. The father submitted into evidence printouts of texts among him, his wife, and the mother that demonstrated petty disputes between the father and his wife and the mother.
The mother began a relationship with S.J. in November 2012, moved in with him in January 2013, and remained in a relationship with him at the time of the last hearing date in August 2013. Both the mother and S.J. testified that the relationship was stable and that, when they were not working, they spent time with family. The father stated that he had no objection to S.J.
After the second day of testimony, the juvenile court entered a pendente lite order on April 17, 2013, awarding the mother unsupervised visitation with the child during the day on Saturdays and Sundays on alternating weekends and, during the summer, on Monday following the weekends she did not exercise visitation. Evidence presented on the last day of the modification hearing indicated that the visitations and the exchanges had gone well. Also, the parties agreed that they had communicated adequately and with no conflict in arranging visitation and during the visitation exchanges. The mother testified that she wanted to have the right to make decisions concerning the child and that she felt that the father was excluding her from *423 those decisions. As an example, the mother stated that the father had informed her at the last minute of the child’s kindergarten graduation. The father testified that he opposed sharing legal custody of the child with the mother. The father also testified that, although recent visitations had gone well, he did not want the mother to have overnight visitation with the child.
The mother argues that the evidence indicates that the father has attempted to frustrate her relationship with the child and, therefore, that the juvenile court should have awarded her joint legal custody of the child in order to protect her relationship with the child. The mother relies on Faellaci v. Faellaci, 98 So.3d 521 (Ala.Civ.App.2012), in which this court concluded that, because the parties had been legally separated rather than divorced, the proper inquiry was whether the change in legal custody of the children served the children’s best interests. The trial court left primary physical custody with the mother in that case but awarded the parties joint legal custody. The mother in Faellaci argued that the parties were engaged in a power struggle and that sharing legal custody would not serve the children’s best interests. This court noted this state’s policy favoring arrangements in which both parents are involved in rearing their children, see § 30-3-150, Ala. Code 1975, and it concluded that, given that policy and the facts of the case, the trial court had not erred in awarding the parties joint legal custody of their children. Faellaci v. Faellaci, 98 So.3d at 530.
The mother also cites Fricks v. Wood, 807 So.2d 561 (Ala.Civ.App.2001), a case in which the trial court modified custody to award the father in that case primary physical custody of the parties’ child. In doing so, the trial court found that the mother in that case had frustrated the father’s attempts to maintain a relationship with the child. This court affirmed, concluding that the trial court had not abused its discretion. The mother cites Fricks v. Wood as an illustration of the policy of this state to encourage both parents to be active and involved in their child’s life.
In this case, the record indicates that the father does not approve of the mother’s choices and lifestylé and that, until the entry of the pendente lite visitation order, he restrictively controlled her access to the child. However, the record also supports a conclusion that the mother’s past choices have been a cause for concern. The juvenile court could have concluded that joint legal custody would not serve the child’s best interests at this time. This court might not have reached the same decision reached by the juvenile court on the issue of the legal custody of the child. However, we cannot say that the mother has demonstrated that the juvenile court’s failure to award the parties joint legal custody of the child was plainly and palpably wrong. Hodgins v. Hodgins, supra. Accordingly, we affirm as to this issue.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
PITTMAN, THOMAS, and DONALDSON, JJ., concur.
MOORE, J., concurs in part and concurs in the result in part, with writing.

. In his brief submitted to this court, the father argues that the issue of joint legal custody was not tried before the juvenile court. The father is correct that, on the first day of the three-day hearing, the mother did not mention a claim seeking joint legal custody. On the last day of the hearing, however, the mother' expressly sought an award of joint legal custody, and the father did not object to the mother’s presentation of evidence on that claim. Accordingly, we conclude that that claim was tried by the implied consent of the parties pursuant to Rule 15(b), Ala. R. Civ. P.

. The parties do not dispute that it was error for the juvenile court to award the mother visitation at the father’s discretion. See L.L.M. v. S.F., 919 So.2d 307, 314-15 (Ala.Civ.App.2005). As already indicated, this court affirmed the appeal of the judgment containing that visitation award on the basis that the mother had failed to preserve the issue for appellate review.