MOORE, Judge.
Kendra L. Beall ("the mother") appeals from a judgment of the Lee Circuit Court ("the trial court") addressing competing custody-modification petitions filed by the mother and Christopher Scott Beall ("the father") regarding the only child of the parties' marriage ("the child"). We affirm the trial court's judgment.
Procedural History
The parties were divorced by a judgment entered by the trial court on September 3, 2013; that judgment incorporated a settlement agreement entered into by the parties ("the settlement agreement"). In the settlement agreement, the parties agreed, among other things, that they would share joint legal and physical custody of the child "[u]ntil the time previous to the child's age of enrollment in a K1 program," at which time the parties "shall either mutually agree upon [sole] physical custody or shall have the matter resolved in the court of proper jurisdiction."[1] The parties agreed to alternate physical custody *1008 of the child on a week-to-week basis; they noted that they understood that either party could move from Lee County and agreed that, if either or both did so move, they would meet halfway between their two residences to exchange the child.
Sometime around January 2014, the mother moved from Auburn to Greenback, Tennessee, and obtained employment at an architectural firm in Knoxville, Tennessee. Pursuant to the settlement agreement, the parties met in Cartersville, Georgia, a location approximately halfway between Auburn and Greenback, to exchange the child. On December 18, 2014, the mother filed in the trial court a "verified petition for modification, complaint for declaratory judgment, breach of contract, and attorney's fees and costs." The mother asserted that the father had breached the settlement agreement. She sought sole physical custody of the child; an award of attorney's fees; a modification of the father's monthly periodic-alimony obligation to her; and a judgment declaring the rights, duties, and obligations of the parties pursuant to the settlement agreement. The father filed a counterclaim on January 20, 2015, seeking sole physical and legal custody of the child. On May 26, 2015, the father filed an amended counterclaim. The mother filed a reply to the father's counterclaim and amended counterclaim on July 6, 2015.
Following ore tenus proceedings, the trial court entered a judgment on August 12, 2016, in which it stated, in pertinent part:
"Having considered the information presented and received by the Court, the Court finds that the parties are probably doing a better job of co-parenting now than they were when they first came before the Court, although they need to continue working on better, more selfless communication and mutual parental support and less 'do it my way' attitude. Both parties have violated the Court Order and the spirit of co-parenting in different ways."
The trial court proceeded to discuss the choices that had been made by the parties following the entry of the divorce judgment, noting both positive and negative effects the mother's decision to move from Alabama to Tennessee had had on the parties and the child.
With regard to custody of the child, the trial court determined that "[t]he parties shall continue to share joint legal custody of [the] child" and that the parents would also "share physical custody." (Emphasis in original.) The judgment establishes that, as long as the parties reside more than 50 miles apart, the party having physical custody of the child shall have the final authority on medical, dental, religious, and athletic decisions concerning the child and that the father shall have final authority over educational decisions; it further provided, however, that, if she moves within 50 miles of the residence of the father, the mother will have final authority over all of the above-referenced decisions except those concerning the child's athletic activities. The trial court directed the parties to formulate a schedule to facilitate their joint physical custody of the child, but established a "Visitation/Physical Custody Schedule" in the event that the parties could not reach an agreement. The judgment provides one schedule if the mother remains in Tennessee and another if the mother moves to or near Auburn. The trial court ordered each party to pay his or her own attorney's fees and denied all other requested relief. The mother filed a postjudgment motion on August 31, 2016; the father filed a response to that motion on September 15, 2016. On September 21, 2016, the trial court entered an order amending its judgment with regard to the parties' custody periods with the child occurring *1009 before July 31, 2017; those amendments do not affect the present appeal. The mother filed her notice of appeal to this court on October 13, 2016.
Facts
The father testified that he was 35 years old at the time of the trial. He stated that his mother resides in Georgia and that his father is deceased. He stated that he does not have any relatives in Auburn, where he lives with the child in a three-bedroom house that he rents. According to the father, the child has lived in Lee County since she was born. He testified that he is employed as the e-commerce manager at Kinnucan's, a specialty outfitter store, where he has worked since June 2013, that he works from 8:00 a.m. to 5:00 p.m. on Monday through Friday of each week and also some weekends, and that he earns $50,000 per year. He admitted, however, that he had engaged in online gaming and gambling and that, at one point after the parties' divorce, he had sought out "payday loans" because his finances were so poor. According to the father, he has three other children by two different women. He stated that he had relinquished custody of one of those children, although, he said, he still owes a child-support arrearage related to that child. He testified further that he exercises visitation with his other two children, who live in Georgia, on the first, second, fourth, and, when applicable, fifth weekends of each month. The father testified that, following his divorce from the mother, he began dating Andrea Riemer in March 2014. According to the father, he and Riemer had broken up in July 2016 because she was still married, although he admitted that he had learned that Riemer was still married approximately six months after they had begun dating. He testified that he had been under the impression that Riemer was legally separated and that, after learning that their situation still constituted adultery, he had discontinued the relationship until Riemer gets divorced. According to the father, he lived with Riemer temporarily, for approximately a month and a half, after he sold the marital residence; the child also stayed with them during the father's custodial periods.
The father testified that the mother moved to Greenback in January 2014 and that, since that time, the parties had met halfway between Greenback and Auburn to exchange the child for their alternating custody periods. He stated that the trip from Auburn to Greenback took between five and six hours and that he had spent approximately $200 on gas each month traveling halfway between the two locations to meet the mother. According to the father, there is not much to do and not a lot of activities for the child to enjoy in Greenback. The father testified that the relationship between the child and the mother had worsened following the mother's move to Tennessee because, when she was with her mother, the child was no longer in the Auburn community or with her friends.
The father testified that the child has become more active as she has gotten older and that there is a lot for the child to do in Auburn. The father stated that he and the child are part of the community in Auburn and that the child had grown a lot in the community and with friends in the Auburn area. According to the father, his home is near the Auburn University campus and he and the child live near the child's school, walk throughout the University campus, and ride bikes in their neighborhood. He stated that he and the child enjoy hiking, camping, paddle-boarding, and other outdoor activities. He stated that, during his weekend visitations with his other two children that coincide with his custody of the child, they do a lot of *1010 activities, get a lot of exercise, and walk campus or "catch Pokemon with the Pokemon Go app." The father testified that he and the child have a very close relationship. He stated that he and the child attend Cornerstone Methodist Church, that they go to Sunday school, and that they attend church twice a week. He admitted that he had not been "overly religious" before he had met the mother.
According to the father, the child should attend school in Auburn because she has a lot of friends in the area, because the Auburn City School System is a great school system, and because the child loves her teachers and is excited about attending school in Auburn. He stated that the child attends the after-school program each day after school until he is able to pick her up. The father testified that the child is very close to his other two children that he exercises visitation with and that they have grown closer as they have grown older. He stated that, if the child went to live in Greenback, it would have a detrimental effect on the child's relationship with those other two children, the child's half siblings.
The mother testified that, at the time of the trial, she was 29 years old. She stated that she had moved to Greenback and that she lives in a residence that is located on the same property on which her parents live; their houses are located approximately a half mile apart. She stated that her sister and her sister's son, her grandmother, her aunt, her uncle, her cousins, and her cousin's children all live in east Tennessee. According to the mother, she graduated from Auburn University in 2013 with degrees in architecture and interior architecture. She stated that she had been employed following her graduation from college by an architecture firm in Newnan, Georgia, although she had continued to reside in Auburn. The mother testified that she had moved to her parents' residence in Greenback in January 2014 and that she had advised the father that she was moving. She stated that the job in Newnan had ended and that she had been unable to find employment in Newnan, Chattanooga, Tennessee, or Atlanta, Georgia, but that she had found a job at an architecture and engineering firm in Knoxville, Tennessee, where she had been employed for over two and a half years at the time of the trial. According to the mother, she was earning $45,760 per year at the time of the trial. She testified that her work hours are flexible, that the firm is very family-oriented, and that, if needed, she is able to take time off to spend with the child.
The mother testified that she attends church in Greenback, that she serves as a deacon, and that she teaches children's church and Sunday school. David Bell, a reverend at the church the mother attends in Greenback, testified, among other things, that he knows the mother mostly through the church, that the mother and the child have been active as members, and that the mother and the child have a very loving and secure relationship. The mother testified that the child attends Sunday school and children's church during her custody periods and that she encourages the child to attend and participate in church activities. According to the mother, the child also participates in a gymnastic program through the preschool she attends in Tennessee. The mother stated that the child has friends in Greenback and that the child had recently celebrated her fifth birthday in Greenback with a party that approximately 23 or 24 children and 50 people total had attended. The mother admitted that the child had handled the parties' alternating custody arrangement "decently well" since the mother had moved to Greenback, although she admitted that it had definitely been tough at times on the child. She stated *1011 that the child had been upset at the end of the alternating custody periods at times. The mother testified that continuing the current custodial schedule would not work based on the child's entering school.
The mother stated that she had been the child's primary caregiver before the parties' divorce, although she agreed that she and the father had both been primary caregivers to the child since their divorce. The mother stated that, in Greenback, her parents serve as a support system and are available to help her with the child as needed. According to the mother, education is very important to her, and, she said, she had provided the father with information regarding the elementary school the child would attend in Tennessee. She stated that she had been pleased with that school. The mother admitted that the child had enjoyed a good relationship with the father's other two children with whom he exercises visitation when the child was younger, although, she said, she no longer witnessed that relationship. She agreed that it was important for the child to have a relationship with her half siblings. The mother testified that she and the child had gone camping and horseback riding together while the child was with her in Tennessee. She stated that they do not spend much time inside when the child is in Tennessee.
Standard of Review
" 'In a case in which the evidence is presented to the trial court ore tenus, such as this one, the findings of the trial court are presumed correct and will not be set aside unless they are plainly and palpably wrong or unjust.' Tibbs v. Anderson, 580 So.2d 1337, 1339 (Ala. 1991). 'Furthermore, where the trial court does not make findings of fact, it will be assumed that the trial court made those findings that were necessary to support its judgment, unless the findings would be clearly erroneous.' Ex parte Walters, 580 So.2d 1352, 1354 (Ala. 1991)."
Brown v. Brown, 26 So.3d 1210, 1213-14 (Ala. Civ. App. 2007).
Analysis
The mother essentially argues that the trial court erred in failing to award her sole physical custody of the child. Taking her arguments out of turn, we first address the mother's contention that the terms of the settlement agreement required the trial court to award one of the parties sole physical custody of the child.
The settlement agreement provides that, upon the child's reaching kindergarten age, "the Parties shall either mutually agree upon primary physical custody or shall have the matter resolved in the Court of proper jurisdiction." The mother maintains that, because the parties could not agree regarding which party should have sole physical custody of the child as she reached kindergarten age, pursuant to the unambiguous terms of the settlement agreement, the trial court was required to award sole physical custody to one party or the other. We do not agree. The settlement agreement merely provides that the trial court would resolve the matter of custody in the event that the parties could not agree on which party should have sole physical custody. Furthermore, even if the settlement agreement could be read as the mother contends, the settlement agreement could not bind the court to prevent it from making a custody determination that it deemed in the best interests of the child because a settlement agreement is not conclusive when a material change of circumstances has occurred since the entry of the judgment incorporating the agreement. See Means v. Means, 512 So.2d 1386, 1388 (Ala. Civ. App. 1987). In fact, in Means, *1012 this court held that a trial court had erred by enforcing a settlement agreement after finding that a material change of circumstances had occurred.
We next address the mother's contention that the trial court did not actually decide the custody dispute. The final judgment directs the parties to set out in writing their agreement as to a schedule for sharing physical custody of the child, but provides that, in the event that the parties cannot reach an agreement, the trial court's "Visitation/Physical Custody Schedule" shall govern. Under the trial court's schedule, the parties shall split sole physical custody of the child for designated periods until July 31, 2017, after which the father shall have sole custody of the child, subject to specified visitation for the mother. The mother complains that the trial court "passed the buck" by failing to simply award her sole physical custody of the child. Our caselaw holds that a provision that leaves visitation to the discretion of the parties is valid as long as the court provides a definite schedule in the event the parties cannot agree. See Burleson v. Burleson, 875 So.2d 316, 321 (Ala. Civ. App. 2003) ; Moody v. Nagle, 811 So.2d 546, 548 (Ala. Civ. App. 2001) (per Crawley, J., with one judge concurring and one judge concurring in the result). In this case, the trial court left it to the parties to agree on their "custodial periods" and "visitation periods," but the court specifically established custody and visitation in the event of a disagreement. Thus, we consider the custody provisions to be valid and to conclusively determine the rights of the parties so as to be a final judgment. See Tidwell v. Tidwell, 496 So.2d 91, 92 (Ala. Civ. App. 1986) (defining a "final judgment" as "a terminal decision which demonstrates there has been complete adjudication of all matters in controversy between the litigants"); compare Barsell v. Barsell, 882 So.2d 859 (Ala. Civ. App. 2003) (holding that order requiring father to return to reside in Alabama, subject to future modification of custody in the event of his refusal, was not a final judgment).
The mother also argues on appeal that the trial court's custody/visitation schedule is not supported by the evidence. That schedule essentially awards the father sole physical custody of the child subject to the mother's scheduled visitation after July 31, 2017, unless the mother returns to live in the Auburn area.[2]
"Where, as in the present case, there is a prior judgment awarding joint physical custody, ' "the best interests of the child" ' standard applies in any subsequent custody-modification proceeding. Exparte Johnson, 673 So.2d 410, 413 (Ala. 1994) (quoting Ex parte Couch, 521 So.2d 987, 989 (Ala. 1988) ). To justify a modification of a preexisting judgment awarding custody, the petitioner must demonstrate that there has been a material change of circumstances since that judgment was entered and that ' "it [is] in the [child's] best interests that the [judgment] be modified" ' in the manner requested. Nave v. Nave, 942 So.2d 372, 376 (Ala. Civ. App. 2005) (quoting Means v. Means, 512 So.2d 1386, 1388 (Ala. Civ. App. 1987) )."
Ex parte Blackstock, 47 So.3d 801, 804-05 (Ala. 2009).
*1013 In its final judgment, the trial court noted that the mother had relocated to Tennessee, thereby depriving the child of daily contact with both parents and requiring the child to make long weekly trips. The mother claims that the trial court improperly used her relocation against her even though, she says, the parties had contemplated in the settlement agreement the possibility of the relocation by either party. The settlement agreement provides that "[t]he Parties understand that either Party may move from Lee County ....," but nothing in that provision can be interpreted to prevent the trial court from considering the mother's relocation with regard to the child's best interests. See Means, supra. When deciding whether to modify custody based on changed circumstances, the trial court certainly could consider the decision of the mother to relocate and its impact on the child. See Vail v. Vail, 532 So.2d 639, 641 (Ala. Civ. App. 1988).[3]
The mother also challenges on appeal the trial court's finding that she violated the settlement agreement and the "spirit of co-parenting" and asserts that the trial court erroneously disregarded the character of the parties because, she says, the evidence presented regarding the father revealed negative characteristics while the evidence pertaining to the mother revealed only positives. We note, however, that the trial court stated in its judgment, after recounting certain of the father's actions following the entry of the divorce judgment, that,
"although [the father] has certainly made many self-focused choices, one of the most impactful choices either of these parents has made was [the mother's] decision that her own personal and professional advancement was more important than [the child] having both parents in the same location. When she chose to move back to Tennessee, she chose that [the child] likely wouldn't have mom and dad visit her at school or watch her in gymnastics. She chose that [the child] might have more time with her maternal grandparents (as wonderful as they are) than with her father. As a result, [the child] has had to leave home for Tennessee every other week, with the possibility that she might move there for a majority of the time."
The trial court's findings that the mother's move to Tennessee had affected the child are supported by the evidence. Thus, even assuming that the trial court erred in concluding that the mother had violated the settlement agreement or the spirit of co-parenting, any such error would not have affected the findings supporting the trial court's judgment and, thus, would be harmless. See Rule 45, Ala. R. App. P. Accordingly, we decline to reverse the trial court's judgment on that basis.
Finally, the mother argues that the findings recited in the trial court's judgment would support only an award of sole physical custody to the mother.
"When evidence in a child custody case has been presented ore tenus to the trial court, that court's findings of fact based on that evidence are presumed to be correct. The trial court is in the best position to make a custody determination-it hears the evidence and observes the witnesses. Appellate courts do not sit in judgment of disputed evidence that *1014 was presented ore tenus before the trial court in a custody hearing. See Ex parte Perkins, 646 So.2d 46, 47 (Ala. 1994), wherein this Court, quoting Phillips v. Phillips, 622 So.2d 410, 412 (Ala. Civ. App. 1993), set out the well-established rule:
" ' "Our standard of review is very limited in cases where the evidence is presented ore tenus. A custody determination of the trial court entered upon oral testimony is accorded a presumption of correctness on appeal, Payne v. Payne, 550 So.2d 440 (Ala. Civ. App. 1989), and Vail v. Vail, 532 So.2d 639 (Ala. Civ. App. 1988), and we will not reverse unless the evidence so fails to support the determination that it is plainly and palpably wrong, or unless an abuse of the trial court's discretion is shown. To substitute our judgment for that of the trial court would be to reweigh the evidence. This Alabama law does not allow. Gamble v. Gamble, 562 So.2d 1343 (Ala. Civ. App. 1990) ; Flowers v. Flowers, 479 So.2d 1257 (Ala. Civ. App. 1985)." '
"It is also well established that in the absence of specific findings of fact, appellate courts will assume that the trial court made those findings necessary to support its judgment, unless such findings would be clearly erroneous."
Ex parte Bryowsky, 676 So.2d 1322, 1324 (Ala. 1996).
The mother admitted that her move to Tennessee had been difficult on the child. Additionally, the father presented evidence indicating that the child benefits from the Auburn community in which she has been raised, citing the availability of outdoor activities that the child enjoys, the child's friends and relationships within the Auburn community, the proximity to a college campus that allows for walking and other activities, and the high-ranking public schools in the area. The father also testified that the child's relationship with the mother had declined after the mother moved to Tennessee. We acknowledge that the mother presented evidence indicating that the child would benefit from residing with her in Tennessee and that she would be a good sole custodian for the child. However, "[i]n instances where the evidence shows that either parent is an appropriate custodian of the minor children, the appellate court is bound to defer to the trial court's custody decision based on the trial court's observations of the witnesses, its credibility determinations, and its resolution of conflicting evidence." Bates v. Bates, 678 So.2d 1160, 1162 (Ala. Civ. App. 1996).
Because the mother has failed to raise any arguments before this court that merit reversal of the trial court's judgment, that judgment is affirmed.
AFFIRMED.
Thompson, P.J., and Pittman, Thomas, and Donaldson, JJ., concur.

The settlement agreement uses the term "primary" physical custody. We use the term "sole" physical custody throughout this opinion to conform to the term used in § 30-3-150 et seq., Ala. Code 1975.

In her brief, the mother challenges only those aspects of the trial court's judgment establishing custody in the event the mother does not return to reside in or near Auburn. Hence, we do not address the validity of the alternative custody provisions purportedly in effect in the event the mother does relocate to the Auburn area. But see Hovater v. Hovater, 577 So.2d 461, 462 (Ala. Civ. App. 1990) ; and Hodgins v. Hodgins, 84 So.3d 116, 126 (Ala. Civ. App. 2011).

Although the father claimed that the mother had violated provisions of the Alabama Parent-Child Relationship Protection Act, § 30-3-160 et seq., Ala. Code 1975, the trial court did not apply the Act, which deals comprehensively with the subject of the relocation of a custodial parent. The father has not filed a cross-appeal, so we do not consider whether the trial court erred in failing to apply the Act.